IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN E. GILMORE,<br><br>    Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK NA, a national bank; NDEX WEST LLC, a Delaware limited liability company;<br><br>    Defendants.<br>_____/ | No. C 14-2389 CW<br><br>ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND SETTING PRELIMINARY INJUNCTION HEARING<br><br>(Docket No. 12) |

On May 7, 2014, Plaintiff Kevin Gilmore filed an Alameda County superior court action, alleging that Defendants Wells Fargo Bank NA and NDEX West LLC wrongly initiated foreclosure proceedings against him in violation of the California Homeowner Bill of Rights (HBOR). The superior court granted a temporary restraining order (TRO) barring foreclosure of Gilmore's property and set a preliminary injunction hearing for June 5, 2014. Defendants removed the action to federal court. On June 3, 2014, Gilmore filed an ex parte application to extend the superior court's TRO. The Court GRANTS the TRO and sets a preliminary injunction hearing.

BACKGROUND

Unless otherwise noted, the facts are taken from Gilmore's accompanying declaration. See Docket No. 12-3. Gilmore inherited the property from his grandfather. On June 21, 2007, he took out

a promissory note in the principal sum of $375,000 to World Savings Bank, FSB.  Through a series of mergers, the servicing of his loan was transferred to Wachovia and then to Wells Fargo.  Wells Fargo asked Gilmore several times to provide proof of hazard insurance on the property, but because of several transfers of his loan, Gilmore did not know where he should send proof.  As a result, Gilmore's loan servicer force-placed insurance on the property.

Due in part to the force-placed insurance, as well as other financial obligations, Gilmore became delinquent on his loan.  On or about March 21, 2012, Wells Fargo recorded and served a Notice of Default.  Gilmore applied for a loan modification but was rejected because he had excessive financial obligations.

In early 2014, Gilmore had a material change in his financial circumstances -- his income increased and his financial obligations decreased by about $1,000 a month.  He submitted a first lien loan modification application to Wells Fargo, documenting these changes.  On March 24, 2014, he received a letter from Wells Fargo acknowledging receipt of his application.  Gilmore Decl., Ex. A.  He responded requesting the status of his loan and, on April 21, 2014, received another letter from Wells Fargo stating:

> As of the date of this letter, your mortgage loan is due for the December 15, 2010, through April 15, 2014 monthly installments.  **Foreclosure is active and a foreclosure sale date is currently scheduled for May 19, 2014.  However, your mortgage loan is currently being reviewed for possible**

**payment assistance**, and you will want to continue working with Sarah Nuncio during the review process.

Gilmore Decl., Ex. B (emphasis added). Gilmore alleges he wishes to obtain a loan modification so he can complete loan payments but has not been given a fair chance to do so.

LEGAL STANDARD

To obtain either a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party must demonstrate "(1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction." Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003); see also Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). The Ninth Circuit has recognized that an injunction could issue if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

3

DISCUSSION

The Homeowner Bill of Rights prohibits a mortgage servicer from engaging in what is known as "dual-tracking." "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer . . . or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). Before recording a notice of default or conducting a trustee's sale, the mortgage servicer must first make a written determination that the borrower is not eligible for a loan modification. Id. Denial of the loan modification triggers a thirty-day appeal period. Cal. Civ. Code § 2923.6(d). If a loan modification is offered, but the borrower either rejects the offer or accepts the offer but breaches the loan modification agreement, then the mortgage servicer may initiate foreclosure proceedings. Cal. Civ. Code § 2923.6(c).

It appears that Wells Fargo did not provide Gilmore with a final disposition of his most recent loan modification application before initiating foreclosure proceedings. Wells Fargo's letter to Gilmore plainly states that its review of his application is ongoing, yet a foreclosure sale has already been scheduled.

The fact that Gilmore previously applied for but was denied a loan modification is not determinative. Where "there has been a material change in the borrower's financial circumstances since

4

the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer," there is an exception to the general rule that a mortgage servicer is not obliged to evaluate applications from borrowers who "have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013."  Cal. Civ. Code § 2923.6(g).  Here, Gilmore experienced substantial improvement in his financial circumstances and documented this with his mortgage servicer, which was the reason for his second application for loan modification.

Wells Fargo also is not likely to be exempt in this case from the HBOR.  Under section 2924.12(g), a signatory to the consent judgment entered in the case <u>United States of America et al. v. Bank of America Corporation et al.</u>, Case No. 1:12-cv-00361 RMC, "that is in compliance with the relevant terms of the Settlement Term Sheet of the consent judgment with respect to the borrower who brought the action pursuant to this section while the consent judgment is in effect shall have no liability for a violation" of section 2923.6.  While Wells Fargo is a signatory to that consent judgment, Gilmore asserts that Wells Fargo has not provided it with an online portal that would allow him to check the status of his loan modification, which is required by the Settlement Term Sheet.  Gilmore Decl. ¶ 22; Pivtorak Decl., Ex. A (Settlement Term Sheet) at A-25.  Gilmore's complaint also alleges that Wells Fargo

5

engaged in dual-tracking, which is barred by the Settlement Term Sheet.  Settlement Term Sheet at A-17-A-21.  Accordingly, it appears that Wells Fargo is not exempt from the HBOR with regards to Gilmore's claims.  Gilmore has therefore established that he is likely to succeed on the merits of his claim.

The other factors also weigh in favor of granting a TRO.  Gilmore would suffer immediate and irreparable injury if the superior court's TRO, due to expire tomorrow, were not extended.  Wells Fargo or its authorized agent could initiate foreclosure proceedings as soon as the TRO expires.  Gilmore would lose real property, which is always considered unique, and that loss would constitute irreparable injury.  See Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir. 1988).  Gilmore's property is particularly unique to him because it is his childhood home.  Because the possible injury is severe, the balance of hardships weighs in Gilmore's favor.  A TRO would delay possible foreclosure for only a short period of time, and so the potential harm to Wells Fargo would not be substantial.  Because of the "adverse impact foreclosures have on households and communities," there is a "strong public interest in preventing unlawful foreclosures."  Sharma v. Provident Funding Associates, LP, 2010 WL 143473, at *2 (N.D. Cal.).

## CONCLUSION

The Court GRANTS Gilmore's application for a TRO, which has issued in a separate order.

6

The Court has further set a preliminary injunction hearing and briefing schedule by separate order.

IT IS SO ORDERED.

Dated: 6/5/2014

CLAUDIA WILKEN
United States District Judge