Robert A. Bailey (#214688)
  rbailey@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.,
("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| KEVIN E. GILMORE, an individual;<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., a national bank; NDEX WEST LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>    Defendants. | CASE NO.: 4:14-CV-02389-CW<br><br>[*Assigned to the Hon. Claudia Wilken*]<br><br>**WELLS FARGO'S RESPONSE TO OSC RE: PRELIMINARY INJUNCTION**<br><br>Date:   June 18, 2014<br>Time:  2:00 pm.<br>Ctrm:   2, 4th Floor |

**TABLE OF CONTENTS**

Page

1. INTRODUCTION ..................................................................................................... 1
2. SUMMARY OF COMPLAINT AND JUDICIALLY NOTICEABLE FACTS ................. 1
3. WELLS FARGO'S COMPLIANCE WITH THE NMS IS FATAL TO PLAINTIFFS' CLAIMS ................................................................................................. 3
4. PLAINTIFF HAS NOT CARRIED HIS BURDEN TO JUSTIFY AN INJUNCTION ........................................................................................................... 8
5. IF AN INJUNCTION ISSUES, AN UNDERTAKING IS REQUIRED ........................ 13
6. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Baca v. Moreno Valley Unified Sch. Dist.*,
   936 F. Supp. 719 (C.D. Cal. 1996) ...................................................................................13

*Ctr. for Competitive Politics v. Harris*,
   2014 U.S. Dist. LEXIS 66512 (E.D. Cal. May 13, 2014)......................................................8

*Glaviano v. J.P. Morgan Chase Bank, N.A.*,
   No. 13-cv-2049, 2013 U.S. Dist. LEXIS 180582, 2013 WL 6823122 (D.D.C. Dec. 27, 2013) ........................................................................................................................................6

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ................................................................................................9

*Mazurek v. Armstrong*,
   520 U.S. 968 (U.S. 1997).......................................................................................................9

*Mead Johnson & Co. v. Abbot Lab.*,
   201 F. 3d 883 (7th Cir. 2000) .............................................................................................13

*Mitchell v. Wells Fargo Bank, N.A.*,
   No. 13-04017-KAW, 2014 U.S. Dist. LEXIS 7803 (N.D. Cal. Jan. 21, 2014) ..................4, 6

*Nintendo of America, Inc. v. Lewis Galoob*,
   16 F. 3d 103 (9th Cir. 1994) ...............................................................................................13

*United States v. Bank of Am. Corp.*,
   2012 U.S. Dist. LEXIS 188892 (D.D.C. Apr. 4, 2012) .......................................................1

*Ware v. Bayview Loan Servicing, LLC*,
   2013 U.S. Dist. LEXIS 163346 (S.D. Cal. Oct. 29, 2013) .................................................10

*Williams v. Wells Fargo Bank, NA*,
   2014 U.S. Dist. LEXIS 17215 (C.D. Cal. Jan. 27, 2014) ..................................................10

*Winter v. Natural Resources Defense Council*,
   555 U.S. 7 (2008)...................................................................................................................9

**STATE CASES**

*United States v. Bank of America,*
   *(*District Court for the District of Columbia, case number 1:12-cv-00361 RMC).....................1

**STATE STATUTES**

Cal. Civ. Code § 2923.6........................................................................................ passim

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Cal. Civ. Code § 2923.6(e) ..................................................................................................9, 12

Cal. Civ. Code § 2924.12(g) .............................................................................................3, 4, 6, 7

**RULES**

Fed. R. Civ. P. 65(c) ..................................................................................................................13

## 1. INTRODUCTION

Plaintiff has not made a mortgage payment in almost four years. Instead, he has submitted what even he calls a "countless" sets of unsuccessful loan modification applications. He brings this lawsuit against his lender, Wells Fargo Bank, NA ("Wells Fargo") accusing it of failing to adequately consider him for a loan modification. Plaintiff previously received a loan modification in 2009. And, he freely admits that he has repeatedly applied for modifications since then, all of which were denied. Nevertheless, he seeks to enjoin the pending foreclosure because he claims to have applied again for a modification based on changed circumstances.

Plaintiff's action is based on a claim that Wells Fargo is violating the "dual tracking" provisions of California Civil Code §2923.6[1] and the National Mortgage Settlement ("NMS") set out in the Consent Judgment in *United States v. Bank of America,* (District Court for the District of Columbia, case number 1:12-cv-00361 RMC).[2] Plaintiff has not made the clear showing necessary to justify issuance of a preliminary injunction. In fact, such a showing is impossible because Wells Fargo is not required to comply with Section 2923.6 because it has complied with the NMS, and the evidence shows that Wells Fargo has complied with Section 2923.6 in any event. It has informed Plaintiff of its denial of his request for a modification and the sale is not set to proceed until July 11, 2014. There is no basis for an injunction.

## 2. SUMMARY OF COMPLAINT AND JUDICIALLY NOTICEABLE FACTS

On June 21, 2007, Plaintiff borrowed $375,000 from Wells Fargo's predecessor, World Savings Bank, FSB. (Comp. ¶13; Request for Judicial Notice Supporting Wells Fargo's Response to OSC re: Preliminary Injunction and Motion to Dismiss and ("RJN"), Ex. 1). World Savings later changed its name to Wachovia Mortgage, FSB and then merged into Wells Fargo. (RJN, Exs. 2-4).

Plaintiff stopped making his mortgage payments four years ago in 2010. (Comp., ¶19 and Ex. B at p. 2; Thomas Decl. ¶ 6). Since then, he has submitted "countless" requests for loan

---

[1] All further statutory references are to the California Civil Code unless otherwise indicated.

[2] The terms of the Consent Judgment and Settlement Term Sheet are available through Lexis at, *United States v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 188892 (D.D.C. Apr. 4, 2012).

1  modifications. (Comp. ¶21). He claims that Wells Fargo hampered his efforts to stay in the

2  home by claiming not to have received the documents supporting the modification applications

3  or asking for additional information. (Comp. ¶¶21-23). Yet, he admits that Wells Fargo did not

4  foreclose on the loan during this years-long process. In reality, Wells Fargo reviewed and either

5  closed for lack of documentation or denied his modification applications no less than 11 times

6  between 2010 and 2014. (Thomas Decl., ¶6 and ¶¶8-9).

7  Almost two years after his default, Wells Fargo finally recorded a Notice of Default

8  ("NoD") on March 21, 2012. (Comp. ¶25; RJN, Ex. 5). That NoD lists the date of default as

9  July 15, 2010 and the amount of arrearage as of March, 2012 as $35,261.86. (RJN, Ex. 5).

10  In June, 2013 Plaintiff admits that his then request for a loan modification was denied due

11  to his excessive financial obligations. (Comp. ¶26). He was actually reviewed again and denied

12  in December, 2013. (Thomas Decl., ¶8, Ex. L).

13  Wells Fargo then recorded a Notice of Trustee's Sale on March 13, 2014. (RJN, Ex. 6).

14  The date set for the sale in that Notice was April 3, 2014. (RJN, Ex. 6).

15  Plaintiff claims to have had a change in his financial condition sometime in early 2014.

16  (Gilmore Decl. ¶17). He says his income increased and his expenses decreased. (Gilmore Decl.

17  ¶17). Plaintiff claims he submitted yet another modification application to Wells Fargo

18  purportedly documenting these changes. (Gilmore Decl. ¶18). Conspicuously absent from

19  Plaintiff's declaration and exhibits in support of his application is a copy of what he submitted.

20  What Plaintiff submitted and why he calls it "documenting" the changes is not clear.

21  Wells Fargo's records indicate it received some documents on March 13, 2014, but that it

22  was not a complete modification package. (Thomas Decl., ¶9). Wells Fargo sent a letter

23  confirming receipt of some documentation relating to mortgage assistance. (Comp., Ex. A). The

24  letter does not articulate what the documents are or that the materials constituted a completed

25  loan modification application.

26  Plaintiff apparently sent Wells Fargo some additional correspondence in early April,

27  2014 because he attaches Wells Fargo's reply to that correspondence as Exhibit B to the

28  complaint. It is also clear that by this point, Wells Fargo had postponed the foreclosure from the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  original date of April 3, 2014 to May 19, 2014. (Comp. ¶30). Wells Fargo's letter states that the
2  foreclosure process is moving forward and reminds Plaintiff of the May 19, 2014 sale date.
3  (Comp., Ex. B at p. 2). It indicates that Plaintiff has repeatedly requested information on the
4  same subjects relating to servicing of his loan and insurance, and that Wells Fargo has already
5  addressed those concerns. (Comp., Ex. B at p.1). It also notes that the loan is being reviewed for
6  payment assistance. (*Id.* p.2). Notably, it does not say that Plaintiff has submitted a completed
7  loan modification application or that Wells Fargo acknowledged a change of circumstances or a
8  basis to postpone foreclosure during the process.

9  In fact, Plaintiff was well aware of the fact that Wells Fargo did not consider his
10 application complete and had requested additional documents. (Thomas Decl., ¶9, Ex. N). It
11 made no less than four follow-up calls in an effort to get the documents. (*Id.*). Wells Fargo had
12 informed him of the need for additional and valid profit and loss statements for his business and
13 that of the non-borrower contributor he was claiming would be helping him meet expenses.
14 (*Id.*). It also required proof of residency at the Property for this non-borrower contributor and
15 her paystubs. (*Id.*). Wells Fargo informed Plaintiff of the need for these materials in March,
16 2014 and then called to remind him of the need to provide them on three more occasions. (*Id.*).
17 He never did. (*Id.*).

18 As a result of Plaintiff's failure to provide the required documents, Wells Fargo closed
19 this latest application on May 28, 2014. (Thomas Decl., ¶10). It advised Plaintiff of that fact on
20 June 3, 2014. (Bailey Decl., ¶2, Exs. A-B).

21 Under these facts, Plaintiff cannot justify his request for a preliminary injunction.

22 **3. WELLS FARGO'S COMPLIANCE WITH THE NMS IS FATAL TO**
23 **PLAINTIFFS' CLAIMS**

24 Wells Fargo is a party to the National Mortgage Settlement (the "NMS"), a settlement
25 reached in United States of America et al. v. Bank of America Corporation et al., 1:12-cv-00361
26 RMC, in D.C. District Court. (Comp. ¶3; RJN, Ex. 7). The NMS is memorialized in a
27 Settlement Term Sheet and the subject of a final Consent Judgment resolving the action.
28 HBOR explicitly includes a safe harbor provision for the signatories of the National

Mortgage Settlement, as codified in Civil Code § 2924.12(g). Section 2924.12(g) provides in pertinent part:

> A signatory to a consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation et al.*, filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

Cal. Civil Code § 2924.12(g). Under this provision, Wells Fargo's status as a signatory to the Consent Judgment means that compliance with the Settlement Terms Sheet insulates Wells Fargo from liability for any violation of section 2923.6. *See Mitchell v. Wells Fargo Bank, N.A.,* No. 13-04017-KAW, 2014 U.S. Dist. LEXIS 7803, at *14 (N.D. Cal. Jan. 21, 2014)

In the instant case, Wells Fargo's compliance with the Term Sheet is shown on the face of the Complaint as well as judicially noticeable documents. Plaintiff seeks to hold Wells Fargo liable for violating the anti-dual-tracking provisions of Section 2923.6. Specifically, Plaintiff claims Wells Fargo noticed a trustee's sale in violation of Section 2923.6(c) despite his submission of a new loan modification application which purportedly documented a change in his financial circumstances. (Comp. ¶37). However, the provisions of Section 2923.6 are trumped by the NMS Term Sheet's contrary provisions regarding dual tracking.

The Settlement Term Sheet bears some similarities to Section 2923.6, but key differences make compliance with the NMS possible without complying with HBOR. This is not surprising because if HBOR were identical to the NMS, there would be no need for the safe harbor provision of Section 2924.12(g). The California Civil Code prohibits a lender from recording "a notice of default or notice of sale or conducting a sale while the complete first lien loan modification is pending." (Cal. Civ. C. §2923.6(c)) The portion of the Settlement Term Sheet relevant here, on the other hand, only bars a lender from *completing* a foreclosure while the modification is under review. (RJN, Ex. 7). It says:

> If, after an eligible borrower has been referred to foreclosure, Servicer receives a complete loan modification application more than 30 days after the Post Referral to Foreclosure Solicitation letter, but more than 37 days before the foreclosure sale is scheduled, then while such loan

1
2
> modification application is pending, Service shall not proceed with the foreclosure sale.

3  (RJN, Ex. 7, at A-19 (para. 6).

4  Another significant difference between the two anti-dual tracking provisions relates to the
5  timing of receipt of the completed loan modification application. Section 2923.6 does not
6  reference a time limit by which a borrower must submit his application in order to trigger the
7  lender's obligation to review and postpone foreclosure. Theoretically, a borrower could submit a
8  completed application 10 minutes before the foreclosure sale and this section could arguably
9  require a postponement of more than 30 days. As the product of negotiation, the NMS
10 eliminates the possibility of such a logistically impractical and procedurally unfair result.

11  Under the NMS, if the lender receives a completed loan application within 37 days of the
12 scheduled sale, the regular anti-dual tracking provisions do not apply. Rather, if the application
13 is received less than 37 days but more than 15 days before the then scheduled sale, the lender is
14 only obligated to conduct an expedited review. (RJN, Ex. 7 at A-19 to A-20 (para. 8)). In that
15 case, the lender is only required to postpone the foreclosure "if the borrower is extended a loan
16 modification…" (*Id.*, at A-20 (para. 8)). Similarly, if a completed application is received less
17 than 15 days before a foreclosure sale, the NMS only requests that the lender notify the borrower
18 "before the foreclosure sale date as to Servicer's determination (if its review was completed) or
19 inability to complete its review of the modification application." (*Id.* at A-20 (para. 9)). And,
20 like the preceding paragraph, it does not prevent the lender from continuing with the foreclosure
21 unless the lender "makes a loan modification offer to the borrower". (*Id.*).

22  Thus, the concept of dual-tracking under the NMS is significantly different than under
23 HBOR. HBOR prevents a lender from taking any of the interim steps associated with non-
24 judicial foreclosure as long as a completed loan modification application is under consideration
25 or for 31-days after denial. The prohibited activity includes recording a notice of default, notice
26 of trustee's sale, or completion of the sale. The NMS, on the other hand, prevents a "referral to
27 foreclosure" or the completion of a sale while the application is under review, but only if the
28 application is received timely, i.e., more than 37-days before the scheduled foreclose sale. The

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

crucial difference is that under the NMS, the lender can record a Notice of Sale after receiving a completed application more than 37 days before the then scheduled sale date, as long as it does not go to sale while the application is pending. If it receives the application within 37 days of the sale, it can not only record appropriate notices, it can proceed to foreclosure unless it offers a loan modification. The NMS therefore provides a more flexible approach. As long as Wells Fargo was in compliance with the NMS provisions, Section 2924.12(g) makes the more stringent provisions of Section 2923.6(c) inapplicable. *Mitchell, supra,* 2014 U.S. Dist. LEXIS 7803, at *14-15.

Wells Fargo referred Plaintiff's loan to foreclosure on September 23, 2013. (Comp., Ex. B, p.1). It recorded its Notice of Trustee's Sale on March 13, 2014. (RJN, Ex. 6). Plaintiff's own complaint confirms that the April 3, 2014 foreclosure sale was postponed following his submission of additional documents shortly before March 24, 2014. (Comp. ¶30). Thus, even if Plaintiff could establish that he provided a completed modification application and adequately documented a change in circumstances, he could not prevail on his claim because Wells Fargo did not foreclose and remains in compliance with the NMS.

Additionally, Plaintiff's alleged completed application was provided within 37 days of the then scheduled sale date. As of March 13, 2014, the sale was scheduled for 20-days later on April 3, 2014. Plaintiff's submission of additional documents was apparently received shortly before March 24, 2014. This was well within 37 days of the sale, and may have been less than 15 days before the scheduled sale. In any event, because the application was received within 37-days of the sale date, the NMS did not require a postponement unless Wells Fargo offered Plaintiff a modification. It is undisputed that it did not. Wells Fargo therefore remained in compliance with the NMS and no liability under Section 2923.6 can attach.

Moreover, the proper measure of Wells Fargo's compliance is not with respect to Plaintiff's particular loan, it is shown by the report for the monitor appointed by the Consent Judgment. That is because, as the District of Columbia District Court explained, the Consent Judgment is concerned with mortgage servicing, origination and certification in general, and not any particular mortgage. *Glaviano v. J.P. Morgan Chase Bank, N.A.*, No. 13-cv-2049, 2013 U.S.

1 Dist. LEXIS 180582, 2013 WL 6823122, at *1 n. 1 (D.D.C. Dec. 27, 2013). Thus, compliance is
2 shown via a report issued by the monitor. (RJN, Ex. 8 at E-10). Here, the monitor has reported
3 Wells Fargo's compliance. (RJN, Ex. 8). This fact alone should eliminate Plaintiff's HBOR
4 claim.

5     This result is the same despite the California legislature's language in Section 2924.12(g)
6 granting safe harbor for compliance with the Settlement Term Sheet "with respect to the
7 borrower who brought an action pursuant to this section while the consent judgment is in
8 effect…" That language creates an ambiguity and reveals a lack of understanding of the
9 compliance and enforcement provisions of the NMS. A lender is in compliance with the NMS
10 not with respect to a particular borrower. It is in compliance based on the metrics and reporting
11 of the monitor.[3] (RJN, Ex. 7 at E-4 (¶ 11) and E-10 (¶3)). The monitor has found Wells Fargo to
12 be in compliance. (RJN, Ex. 8).

13     The monitor's finding of compliance is significant and controlling for a number of
14 reasons. First, as noted above, the Settlement Term Sheet itself defines compliance based on the
15 measurement metrics provided in Exhibit E-1 thereto. (RJN, Ex. 7 at E-4 (¶ 11) and E-10 (¶3)).
16 To the extent Section 2924.12(g) would require the imposition of a different meaning of
17 compliance, one that is specific to a particular borrower, that would create a standard not found
18 in the NMS and would require interpretation and enforcement of the NMS, a prerogative that
19 belongs only to the District Court for the District of Columbia. Put differently, if 2924.12(g)
20 requires a Court to interpret and analyze the NMS in order to determine whether a particular
21 borrower can show non-compliance as to him or her, then the statute would be interfering with
22 the exclusive jurisdiction for such interpretation given to the District of Columbia court. Taking
23 the monitor's report of compliance at face value avoids this untenable and unworkable result.

---

[3] A "Potential Violation" of the Consent Judgment occurs "if the Servicer has exceeded the Threshold Error Rate set for a Metric in a given Quarter." Page 200 of NMS (Exhibit E to Consent Judgment, at page E-11). The "Threshold Error Rates" are the method of determining whether the lender has complied with the NMS based on Metrics. Page 193-194 of NMS (Exhibit E to Consent Judgment, at pages E-4 through E-5). Metrics are used for categories of borrowers per specific terms of the NMS (e.g. servicing standards), not to protect individual borrowers. (Exhibit E-1 to Consent Judgment).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Second, the Term Sheet requires that Wells Fargo remediate any violations identified by the monitor to the extent those potential violations harm any particular borrowers. (RJN, Ex. 7 at p.E-12, subp. 5), Thus, the absence of any violations identified by the report necessarily means there have been no borrowers identified who may have been harmed by the violation.

Third, requiring proof of compliance with the entire NMS with respect to an individual borrower makes little practical or equitable sense. The monitor's report creates a presumption of compliance as to individual borrowers. To hold otherwise would require the bank to prove a counterfactual: that it did not violate any of the dozens of provisions of the Settlement Term Sheet, many of which would not apply to every borrower. And, the process of making such a showing would again amount to a type of enforcement action over which the District of Columbia court has exclusive jurisdiction.

Fourth, using the monitor's report as establishing compliance is consistent with the fact that individual borrowers are not parties to or intended beneficiaries of the NMS. They therefore lack standing to enforce it. Proof of compliance (or violations) on an individual level would have the effect of giving individual borrowers power to enforce the NMS despite the language of the NMS itself and the great weight of authority holding that they have no such power. The California legislature cannot make individual borrowers third party beneficiaries to a contract between banks and attorneys general through enactment of HBOR.

Wells Fargo's compliance with the NMS Settlement Term sheet is apparent from the face of the complaint and the judicially noticeable monitor's report. That compliance is fatal to Plaintiff's attempt to enforce liability under Section 2923.6.

## 4. PLAINTIFF HAS NOT CARRIED HIS BURDEN TO JUSTIFY AN INJUNCTION

A plaintiff seeking a preliminary injunction bears a heavy burden. "A preliminary injunction is an extraordinary remedy, and the moving party has the burden of proving the propriety of such a remedy by clear and convincing evidence." *Ctr. for Competitive Politics v. Harris*, 2014 U.S. Dist. LEXIS 66512, at *4 (E.D. Cal. May 13, 2014) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 442, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). To obtain

a preliminary injunction, the requesting party must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

The burden of proof to satisfy these elements falls on the movant. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (U.S. 1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).

Plaintiff has failed to carry this burden. He bases his injunction request on a purported violation of Section 2923.6's provisions against dual-tracking. In broad terms, that Section prevents a lender from foreclosing while simultaneously evaluating a completed application for a loan modification.

Unlike the NMS which only prohibits proceeding to foreclosure, Section 2923.6 prohibits three different actions if a completed loan modification is under review. A lender cannot: 1) record a notice of default; 2) record a notice of sale; or 3) proceed to foreclosure. Cal. Civ. Code §2923.6(e). Wells Fargo's notice of default and notice of sale were recorded before Plaintiff submitted his most recent application. Thus, he is seeking to prevent Wells Fargo from carrying through with the third item, completing a foreclosure. However, section 2923.6's dual tracking restrictions are not triggered unless the borrower has submitted a *complete* application and, if the borrower has been reviewed or been denied for a modification, the new application included a documented change in financial circumstances. Cal. Civ. C. §2923.6(c), (g) and (h).

Plaintiff not only received a previous modification, he also readily admits that he had submitted "countless" other applications which were denied. (Comp. ¶21). In reality, Wells Fargo has responded to *eleven* separate requests for modifications. Each one has resulted in a denial or a closing of the review due to Plaintiff's failure to provide required documents.

1  (Thomas Decl., ¶¶6, 8-9). The most recent denial prior to his March, 2014 application came in
2  December, 2013. (Thomas Decl., Ex. L). Accordingly, Plaintiff would only be entitled to the
3  protections of Section 2923.6's anti-dual tracking protections if he could show the submission of
4  a completed loan application which included a documented material change in his financial
5  circumstances. Although the TRO application was supported by declaration, these provide no
6  additional details or documentation than that included with the complaint. As noted in the
7  accompanying Motion to Dismiss, the allegations are insufficient to state a cause of action, let
8  alone provide the *clear* showing required to justify the extraordinary remedy of a preliminary
9  injunction.

10　　Plaintiff claims to have had a change in his financial condition sometime in early 2014.
11  (Gilmore Decl. ¶17). He says his prior application was denied due to excessive financial
12  obligations relative to his income. (Comp. ¶26). But he now claims his income increased and
13  his expenses decreased. (Gilmore Decl. ¶17). Plaintiff claims he submitted yet another
14  modification application to Wells Fargo purportedly documenting these changes. (Gilmore Decl.
15  ¶18). Yet, such statements are entirely conclusory and not supported by any details,
16  documentation or evidence. Plaintiff's conclusory assertion of a material change in
17  circumstances is not sufficient to satisfy the requirements of Section 2923.6. *See Ware v.*
18  *Bayview Loan Servicing, LLC,* 2013 U.S. Dist. LEXIS 163346, at *14-15 (S.D. Cal. Oct. 29,
19  2013) (motion to dismiss Section 2923.6 claim granted because plaintiff failed to articulate a
20  documented material change in circumstances with anything more than an allegation and a letter
21  claiming an increase in expenses); *see also Williams v. Wells Fargo Bank, NA,* 2014 U.S. Dist.
22  LEXIS 17215, at *15-16 (C.D. Cal. Jan. 27, 2014) (plaintiffs could not maintain Section 2923.6
23  claim based only on a letter purporting to explain the changed circumstances). The nature of the
24  documentation submitted is, therefore, key to establishing the applicability of the re-review
25  requirements of subsection 2323.6(g). Here, Plaintiff provides no description of the
26  documentation he submitted.

27　　Conspicuously absent from Plaintiff's declaration and exhibits in support of his
28  application is a copy of what he submitted or why he believes his submission constituted

1  adequate documentation of a change in circumstances. Apparently recognizing that borrowers
2  may attempt to perpetually delay an inevitable foreclosure by filing repeated modification
3  applications (exactly the circumstance here), the California legislature created an exception to
4  the anti-dual tracking provisions. Thus, a borrower previously denied for a loan modification
5  faces a higher burden to show a Section 2923.6 violation. It is not enough to establish
6  submission of a completed loan application. A borrower like Plaintiff who has previously been
7  reviewed and denied *ten* times must also show that he documented a material change in financial
8  circumstances since his prior application.

9  The only way to prove a "change" is to show the original circumstance in comparison
10 with the new circumstance. Thus, proving a change in financial circumstances requires
11 presenting some evidence of what his documented financial circumstances were in the prior
12 application as contrasted with evidence showing what his documented financial circumstances
13 were in the most recent application. Absent such a showing, there is no way for the court to find
14 a *change* or determine whether such a *change* is material. Plaintiff does not provide the Court
15 with any evidence as to his documented financial circumstances either with respect to his last
16 application or the current one. As such, he has not carried his significant burden to show a
17 likelihood of prevailing on the merits.

18 In reality, a comparison of his October, 2013 Request for Modification Assistance form
19 with his March, 2014 form shows that the statement in his TRO declaration that his income
20 increased and expenses decreased (see Gilmore Decl., ¶17) directly contradicts what he reported
21 to Wells Fargo. His October, 2013 form lists his monthly income as $6,271 and monthly
22 expenses as $1,770. (Thomas Decl., Ex. K, p.2). His March, 2014 form show a *decrease* in
23 monthly income to $5,400 and an *increase* in expenses to $2,219. (Thomas Decl., Ex. M, p.5).
24 If his prior denial was based on insufficient income relative to expenses, an application showing
25 less income and more expenses cannot be considered a "material" change in financial
26 circumstances such that a different result might occur and new review would be necessary.

27 Nor can Plaintiff establish that he submitted a complete loan modification application.
28 Section 2923.6(h) specifies that an application is only complete when the borrower has provided

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 the lender all the documents the lender requires. Plaintiff points to a letter Wells Fargo sent him
2 on March 24, 2014 as evidence that his application was complete. (Gilmore Decl., ¶19, Ex. A).
3 However, that letter merely acknowledges receipt of some documents. Nowhere does it say that
4 the application is complete. To the contrary, it says that additional documents may be required.
5 (Comp., Ex. A).

6 This was exactly the case. Wells Fargo requested additional documents on March 24,
7 2014. (Thomas Decl. ¶9, Ex. N). Specifically, Wells Fargo noted that Plaintiff's application
8 included income from a third party who purported lived at the Property and contributed to the
9 expenses. (Thomas Decl., ¶9). Yet, all the documentation Plaintiff submitted about this person
10 listed her address as somewhere else. (Thomas Decl., ¶9). Thus, Wells Fargo requested proof of
11 her occupancy.

12 Wells Fargo also requested documentation regarding Plaintiff's own income. Plaintiff is
13 self-employed. (Thomas Decl., ¶9). To support his business income, he provided an insufficient
14 profit and loss statement that covered a time period past the date of the application. (Thomas
15 Decl., ¶9). This was insufficient and Wells Fargo requested an additional profit and loss
16 statement covering a 90-day period. (Thomas Decl., ¶9).

17 Wells Fargo repeatedly called Plaintiff to remind him to send the required information.
18 (Thomas Decl., ¶9, Ex. N). Plaintiff failed to provide any of the additional materials Wells
19 Fargo requested. (Thomas Decl., ¶9). As result, his application was not complete and Section
20 2923.6's prohibition against foreclosure was not triggered.

21 Finally, an injunction cannot issue because Wells Fargo has advised Plaintiff of its denial
22 of his modification application and the sale will not take place for more than 31-days following
23 that notice. Under Section 2923.6(e), a lender cannot proceed to foreclosure until 31-days after
24 notifying a borrower of its decision denying a loan modification application. Wells Fargo
25 notified Plaintiff that it was denying his application based on the failure to provide required
26 documents on June 3, 2014. (Thomas Decl., ¶10; Bailey Decl., Ex. A). It has also continued the
27 foreclosure sale to July 11, 2014. (Thomas Decl., ¶11). Accordingly, even if Plaintiff has
28 established a Section 2923.6 violation (he did not), it has been remedied and there is no longer a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

basis for an injunction.

### 5. IF AN INJUNCTION ISSUES, AN UNDERTAKING IS REQUIRED

Before a party may obtain a preliminary injunction, she is required to post an appropriate bond. Fed. R. Civ. P. 65(c). The bond serves as security for the opposing party in the event the preliminary injunction was improperly granted. *Nintendo of America, Inc. v. Lewis Galoob*, 16 F. 3d 103, 1037 (9th Cir. 1994). "When setting the amount of the security, district courts should err on the high side . . . ." *Mead Johnson & Co. v. Abbot Lab.*, 201 F. 3d 883, 888 (7th Cir. 2000).

While the District Court has some discretion to waive the undertaking requirement, it may do so only if there is such a high probability of success that equity compels waiving the bond, the balance of equities overwhelmingly favors the movant, it appears unlikely that the defendant will suffer any harm as a result of the preliminary injunction, or the requirement of a bond would have a negative impact on the movant's constitutional rights. *See Baca v. Moreno Valley Unified Sch. Dist.,* 936 F. Supp. 719, 738 (C.D. Cal. 1996). None of these conditions are present here.

Plaintiff has not made a payment since 2010, but has staved off foreclosure with ten separate loan modification applications and a Chapter 13 bankruptcy that was dismissed for failure to make plan payments. (RJN, Ex. 10). He cannot show a likelihood of prevailing on the merits of his Section 2923.6 claim because Wells Fargo is in compliance with the NMS and Plaintiff did not submit a completed loan application documenting a material change in circumstances. Moreover, Plaintiff does not claim poverty or an inability to post a bond. Such a claim would be belied by the fact that he owns a separate property in Berkley which he values at $600,000. (Thomas Decl., Ex. K, p.3). That property is unencumbered and apparently serves as Plaintiff's "second home". With those kinds of assets available, any claim by Plaintiff that he cannot afford to post a bond would defy credulity.

If Wells Fargo is prevented from foreclosing, it will continue to lose interest payments due on the loan and it will be required to pay taxes, insurance and attorney's fees. The amount of arrearage as of the March, 2014 had arisen to $415,100.14. Plaintiff lists his interest only

mortgage payment, plus escrowed taxes and insurance as $1,800 per month. (Thomas Decl., Ex. M, p.5). Trial in this matter is not likely to take place before late-summer, 2015. Any bond should therefore cover at least $1,800 per month for 14 months ($25,200) plus an additional $40,000 in attorneys' fees (see Bailey Decl., ¶3). Wells Fargo therefore requests that any injunction be conditioned on Plaintiff posting an undertaking or bond in the amount of $65,000.

### 6. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests the Court deny the preliminary injunction. Alternatively, if an injunction should issue, Wells Fargo requests that it be conditioned on Plaintiff posting a bond for $65,000.

Respectfully submitted,

Dated: June 9, 2014

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: /s/ Robert A. Bailey
Robert A. Bailey
rbailey@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.,

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing documents entitled:

**WELLS FARGO'S RESPONSE TO OSC RE: PRELIMINARY INJUNCTION**

on the interested parties in said case as follows:

**Served Via the Court's CM/ECF System:**

| *Attorneys for Plaintiff:* | *Counsel for Defendant NDeX West* |
|---|---|
| David Pivotrak, Esq.<br>PIVTORAK LAW FIRM<br>180 Montgomery St., Suite 2000<br>San Francisco, CA 94104<br><br>T: (415) 484-3009 \| F: (877) 748-4529<br>Email: pivtoraklaw@gmail.com | Edward A. Treder, Esq.<br>BARRETT DAFFIN FRAPPIER<br>TREDER & WEISS, LLP<br>20955 Pathfinder Road, Suite 300<br>Diamond Bar, CA 91765<br><br>T: (626) 915-5714 \| F: (909) 595-7640<br>Email: edwardt@bdfgroup.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **June 9, 2014**.

| Maureen Courtney | */s/ Maureen Courtney* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |