Robert A. Bailey (#214688)
    rbailey@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
    CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.,
("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| KEVIN E. GILMORE, an individual; | CASE NO.: 4:14-CV-02389-CW |
| Plaintiff, | [*Assigned to the Hon. Claudia Wilken*] |
| v. | |
| WELLS FARGO BANK, N.A., a national bank; NDEX WEST LLC, a Delaware limited liability company; and DOES 1-10, inclusive, | **WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | Date:    August 21, 2014<br>Time:    2:00 p.m.<br>Ctrm:    2, 4th Floor |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on August 21, 2014 at 2:00 p.m. in courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move to dismiss each of the causes of action in the Complaint pursuant to FRCP 12(b)(6).

Grounds for the motion, brought pursuant to FRCP 12(b)(6) and 9, are: (1) Wells Fargo's compliance with the National Mortgage Settlement immunizes it from liability under Civil Code §2923.6; (2) Plaintiff has not stated a claim upon which relief can be granted; (3) Plaintiff may not cancel the notice of sale without tendering his debt; and (4) Plaintiff has not pled his misrepresentation claims with the required specificity.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    The motion to dismiss is based upon this notice, the following memorandum of points

2  and authorities, the Original Complaint, the First Amended Complaint, the Request for Judicial

3  Notice filed herewith, the pleadings and papers on file with the Court and on Wells Fargo's

4  argument at the hearing, if any.

5

6                                                    Respectfully submitted,

7  Dated:  July 7, 2014                             ANGLIN, FLEWELLING, RASMUSSEN,
                                                     CAMPBELL & TRYTTEN LLP
8

9                                                    By:   /s/ Robert A. Bailey
                                                         Robert A. Bailey
10                                                        rbailey@afrct.com
                                                     Attorneys for Defendant
11                                                   WELLS FARGO BANK, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2                     CASE NO.: 4:14-CV-02389-CW
                                                                      NOTICE OF MOTION TO DISMISS

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3   MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

4   1.    INTRODUCTION .......................................................................................................1

    2.    SUMMARY OF COMPLAINT AND JUDICIALLY NOTICEABLE FACTS.................1

5   3.    WELLS FARGO'S COMPLIANCE WITH THE NMS IS FATAL TO
          PLAINTIFFS' CLAIMS ............................................................................................3

6

7   4.    PLAINTIFF HAS NOT STATED A VIOLATION OF CIVIL CODE §2923.6 ...............8

    5.    PLAINTIFF HAS NOT PLED A CANCELLATION OF INSTRUMENT CLAIM........11

8   6.    PLAINTIFF CANNOT MAINTAIN A NEGLIGENCE CLAIM FOR
          DAMAGES................................................................................................................12

9   7.    PLAINTIFF'S MISREPRESENTATION CLAIMS ARE IMPROPERLY PLED .........14

10        A.    The Negligent Misrepresentation Claim Fails .......................................................14

    B.    The Fraud Claim Lacks Required Detail ................................................................16

11

12  8.    CONCLUSION..........................................................................................................17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Adesokan v. U.S. Bank, N.A.*,
   2012 U.S. Dist. LEXIS 15192, 2012 WL 395969 (E.D. Cal. Feb. 7, 2012)...........................12

5

*Badame v. JP Morgan Chase Bank, N.A.*,
   2014 U.S. Dist. LEXIS 22164 ...................................................................................13, 14

6

7

*Compass Bank v. Petersen*,
   886 F. Supp. 2d 1186 (C.D. Cal. 2012) ...........................................................................12

8

9

*Corazon v. Aurora Loan Servs.*,
   11-00542 SC, LLC, 2011 U.S. Dist. LEXIS 97333 (N.D. Cal. Aug. 30, 2011).....................15

10

*Deschaine v. IndyMac Mortg. Servs.*,
   2014 U.S. Dist. LEXIS 8541 (E.D. Cal. Jan. 22, 2014) ........................................................13

11

12

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987) .....................................................................................10

13

14

*Ebeid ex. rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ........................................................................................15

15

*Errico v. Pacific Capital Bank, N.A.*,
   753 F. Supp. 2d 1034 (N.D. Cal. 2010) ...........................................................................15

16

17

*Glaviano v. J.P. Morgan Chase Bank, N.A.*,
   No. 13-cv-2049, 2013 U.S. Dist. LEXIS 180582, 2013 WL 6823122 (D.D.C. Dec. 27,
   2013) ............................................................................................................................6

18

19

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999) ...........................................................................16

20

21

*Kimball v. Flagstar Bank F.S.B.*,
   881 F.Supp.2d 1209 (S.D. Cal. 2012)...............................................................................12

22

23

*Martinez v. Wells Fargo Home Mortg., Inc.*,
   598 F.3d 549 (9th Cir. 2010) ........................................................................................10

24

*McLaughlin v. Aurora Loan Servs., LLC*,
   2014 U.S. Dist. LEXIS 62142 (C.D. Cal. Apr. 28, 2014) ....................................................15

25

26

*Mitchell v. Wells Fargo Bank, N.A.*,
   No. 13-04017-KAW, 2014 U.S. Dist. LEXIS 7803 (N.D. Cal. Jan. 21, 2014)....................4, 6

27

*Rockridge Trust v. Wells Fargo, N.A.*,
   C-13-01457 JCS, 2013 U.S. Dist. LEXIS 139606 (N.D. Cal. Sept. 25, 2013)........................12

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Rose v. Chase Bank USA, N.A.,*
   513 F.3d 1032 (9th Cir. 2008) ............................................11

*Roussel v. Wells Fargo Bank,*
   C 12-04057 CRB, 2012 U.S. Dist. LEXIS 153798 (N.D. Cal. Oct. 25, 2012)........................13

*United States v. Bank of Am. Corp.,*
   2012 U.S. Dist. LEXIS 188892 (D.D.C. Apr. 4, 2012) ............................................1

*Villegas v. Wells Fargo Bank, N.A.,*
   2012 U.S. Dist. LEXIS 132511 (N.D. Cal. Sept. 17, 2012) ....................................15

*Ware v. Bayview Loan Servicing, LLC,*
   2013 U.S. Dist. LEXIS 163346 (S.D. Cal. Oct. 29, 2013) ....................................9

*Williams v. Wells Fargo Bank, NA,*
   2014 U.S. Dist. LEXIS 17215 (C.D. Cal. Jan. 27, 2014) ....................................9

**STATE CASES**

*Gentry v. eBay, Inc.,*
   99 Cal. App. 4th 816 (2002) ....................................16

*Lueras v. BAC Home Loans Servicing, LP,*
   221 Cal. App. 4th 49 (2013) ....................................14, 15

*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp.,*
   171 Cal.App.4th 35 (2009) ....................................15

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
   2 Cal.App.4th 153 (1991) ....................................15

**FEDERAL STATUTES**

12 U.S.C. § 24 ....................................10

12 U.S.C. § 371(a) ....................................10

Home Owners Loan Act (HOLA) ....................................11

**STATE STATUTES**

Cal. Civ. Code § 2923.6 .................................... passim

Cal. Civ. Code § 2923.6(f) ....................................10, 11

Cal. Civ. Code § 2923.6(g) and (h) ....................................8, 9

Cal. Civ. Code § 2924.12(g) .................................... passim

Cal. Civ. Code §§ 3412, et seq. ....................................12

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

**RULES**

2

Rule 9 ....................................................................................................................15

3

**REGULATIONS**

4

12 C.F.R. § 34.4(a)(9).........................................................................................11

5

**CONSTITUTIONAL PROVISIONS**

6

Bill of Rights..........................................................................................................3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

iv

CASE NO.: 4:14-CV-02389-CW
TABLE OF AUTHORITIES

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### 1.      INTRODUCTION

Plaintiff has not made a mortgage payment in almost four years.  Yet, he brings this lawsuit against his lender, Wells Fargo Bank, NA ("Wells Fargo") accusing it of failing to adequately consider him, yet again, for a loan modification.  Plaintiff previously received a loan modification in 2009.  And, he freely admits that he has repeatedly applied for modifications, all of which were denied.  Nevertheless, he brought the instant lawsuit in an effort to bar foreclosure because he claims to have applied again for a modification based on changed circumstances.

Plaintiff's action is based on a claim that Wells Fargo is violating the "dual tracking" provisions of California Civil Code §2923.6 and the National Mortgage Settlement ("NMS") set out in the Consent Judgment in *United States v. Bank of America,* (District Court for the District of Columbia, case number 1:12-cv-00361 RMC).[1]  These claims are hopelessly flawed.  The face of the complaint and judicially noticeable documents show that Wells Fargo has complied with its obligations under the NMS.  That compliance makes Section 2923.6 inapplicable and Plaintiff's reliance on it misplaced pursuant to Section 2924.12(g).  Even if Wells Fargo had not complied with the NMS, Plaintiff lacks standing to assert such non-compliance.  In short, plaintiff's dual tracking claim fails no matter what theory he tries to use.

Similarly, Plaintiff's damage claims based on negligence, negligent misrepresentation and fraud are all too vague to survive a motion to dismiss.  Plaintiff does not articulate a viable duty of care, a breach of a duty, causation or damages necessary to plead a negligence claim.  He provides no details as to an false statement, who made it, when or what he did in reliance.  As a result, his misrepresentation claims are hopelessly flawed and must be dismissed.

### 2.   SUMMARY OF COMPLAINT AND JUDICIALLY NOTICEABLE FACTS

On June 21, 2007, Plaintiff borrowed $375,000 from Wells Fargo's predecessor, World Savings Bank, FSB.  (FAC ¶13; Request for Judicial Notice in Support of Wells Fargo's Response to OSC re:  Preliminary Injunction and Motion to Dismiss ("RJN"), Ex. 1)  World

---

[1] The terms of the Consent Judgment and Settlement Term Sheet are available through Lexis at, *United States v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 188892 (D.D.C. Apr. 4, 2012).

CASE NO.: 4:14-CV-02389-CW
MOTION TO DISMISS

Savings later changed its name to Wachovia Mortgage, FSB and then merged into Wells Fargo. (RJN, Exs. 2-4).

Plaintiff stopped making his mortgage payments four years ago in 2010. (FAC ¶19 and Ex. B at p. 2). Since then, he has submitted "countless" requests for loan modifications. (FAC ¶21). He claims that Wells Fargo hampered his efforts to stay in the home by claiming not to have received the documents supporting the modification applications or asking for additional information. (FAC ¶¶21-22). Yet, he admits that Wells Fargo did not foreclose on the loan during this years-long process.

Almost two years after his default, Wells Fargo finally recorded a Notice of Default ("NoD") on March 21, 2012. (FAC ¶24; RJN, Ex. 5). That NoD lists the date of default in 2010 and the amount of arrearage as of March, 2012 as $35,261.86. (RJN, Ex. 5).

In June, 2013, Wells Fargo informed Plaintiff that his request for a loan modification was denied due to his excessive financial obligations. (FAC ¶25). And, in "late 2013" Wells Fargo again denied Plaintiff's request for assistance because his income of $2,900 was insufficient. (FAC ¶26). Thereafter, Wells Fargo's trustee recorded a Notice of Trustee's Sale on March 13, 2014. (RJN, Ex. 6). The date set for the sale in that Notice was April 3, 2014. (RJN, Ex. 6).

Plaintiff claims to have had a change in his financial condition sometime in 2014. (FAC ¶27). Plaintiff claims he submitted yet another modification application to Wells Fargo purportedly documenting these changes. (FAC ¶30). Just what Plaintiff submitted and why he calls it "documenting" the changes is not clear. When he submitted it is also not clear. It appears to have been shortly before March 24, 2014 when Wells Fargo sent a letter confirming receipt of some documentation relating to mortgage assistance. (FAC Ex. A). The letter does not articulate what the documents are or that the materials constituted a completed loan modification application.

Plaintiff apparently sent Wells Fargo some additional correspondence in early April, 2014 because he attaches Wells Fargo's reply to that correspondence as Exhibit B to the complaint. It is also clear that by this point, Wells Fargo had postponed the foreclosure from the original date of April 3, 2014 to May 19, 2014. (FAC ¶33). Wells Fargo's letter states that the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   foreclosure process is moving forward and reminds Plaintiff of the May 19, 2014 sale date.

2   (FAC, Ex. B at p. 2).  It indicates that Plaintiff has repeatedly requested information on the same

3   subjects relating to servicing of his loan and insurance, and that Wells Fargo has already

4   addressed those concerns.  (FAC, Ex. B at p.1).  It also notes that the loan is being reviewed for

5   payment assistance.  (*Id.* p.2).  Notably, it does not say that Plaintiff has submitted a completed

6   loan modification application or that Wells Fargo acknowledged a change of circumstances or a

7   basis to postpone foreclosure during the process.

8        Plaintiff claims the May 13, 2014 recording of the notice of sale process violated the

9   dual-tracking restrictions in California's Homeowners' Bill of Rights ("HBOR") as codified in

10  Civil Code §2923.6.  (FAC ¶39).  He claims that Wells Fargo never gave him a determination on

11  his most recent modification request and therefore may not proceed to foreclosure.  (FAC ¶36).

12  In reality, Wells Fargo informed Plaintiff that his application was incomplete and that he could

13  not be offered a modification as a result.  (RJN, Ex. 9).

14       Based on these allegations, Plaintiff seeks an injunction barring foreclosure as well as

15  damages.  None of his claims can withstand scrutiny.

### 3.   WELLS FARGO'S COMPLIANCE WITH THE NMS IS FATAL TO PLAINTIFFS' CLAIMS

18       Wells Fargo  is a party to the National Mortgage Settlement (the "NMS"), a settlement

19  reached in *United States of America et al. v. Bank of America Corporation et al*., 1:12-cv-00361

20  RMC, in D.C. District Court.  (Comp. ¶3).  The NMS is memorialized in a Settlement Term

21  Sheet and the subject of a final Consent Judgment resolving the action.

22       HBOR explicitly includes a safe harbor provision for the signatories of the National

23  Mortgage Settlement, as codified in Civil Code § 2924.12(g). Section 2924.12(g) provides in

24  pertinent part:

25       A signatory to a consent judgment entered in the case entitled *United States of
         America et al. v. Bank of America Corporation et al*., filed in the United States
26       District Court for the District of Columbia, case number 1:12-cv-00361 RMC,
         that is in compliance with the relevant terms of the Settlement Term Sheet of
27       that consent judgment with respect to the borrower who brought an action
         pursuant to this section while the consent judgment is in effect shall have no
28       liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10,
         2924.11, or 2924.17.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Cal. Civil Code § 2924.12(g).  Under this provision, Wells Fargo's status as a signatory to the

2  Consent Judgment means that compliance with the Settlement Terms Sheet insulates Wells

3  Fargo  from liability for any violation of section 2923.6.  *See Mitchell v. Wells Fargo Bank, N.A.,*

4  No. 13-04017-KAW, 2014 U.S. Dist. LEXIS 7803, at *14 (N.D. Cal. Jan. 21, 2014).  Plaintiff

5  does not and cannot allege that Wells Fargo failed to comply with the NMS.  As a result, he

6  cannot maintain a claim based on a violation of HBOR.

7      In the instant case, Wells Fargo's compliance with the Term Sheet is shown on the face

8  of the Complaint as well as judicially noticeable documents.  Plaintiff seeks to hold Wells Fargo

9  liable for violating the anti-dual-tracking provisions of Section 2923.6.  Specifically, Plaintiff

10  claims Wells Fargo noticed a trustee's sale in violation of Section 2923.6(c) despite his

11  submission of a new loan modification application.  (FAC ¶40).  However, the provisions of

12  Section 2923.6 are trumped by the NMS Term Sheet's contrary provisions regarding dual

13  tracking.

14      The Settlement Term Sheet bears some similarities to Section 2923.6, but key differences

15  make compliance with the NMS possible without complying with HBOR.  This is not surprising

16  because if HBOR were identical to the NMS, there would be no need for the safe harbor

17  provision of Section 2924.12(g).  The California Civil Code prohibits a lender from recording "a

18  notice of default or notice of sale or conducting a sale while the complete first lien loan

19  modification is pending."  (Cal. Civ. C. §2923.6(c))  The portion of the Settlement Term Sheet

20  relevant here, on the other hand, only bars a lender from *completing* a foreclosure while the

21  modification is under review.  (RJN, Ex. 7).  It says:

22      If, after an eligible borrower has been referred to foreclosure, Servicer
        receives a complete loan modification application more than 30 days
23      after the Post Referral to Foreclosure Solicitation letter, but more than
        37 days before the foreclosure sale is scheduled, then while such loan
24      modification application is pending, Service shall not proceed with
        the foreclosure sale.
25

26  (RJN, Ex. 7, at A-19 (para. 6).  A servicer complies with the NMS's dual tracking restriction as

27  long as it does not complete the foreclosure.  There is no prohibition against other pre-

28  foreclosure activities such as recording a notice of trustee's sale.  Thus, even if Plaintiff could

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   establish that he provided a completed modification application and adequately documented a

2   change in circumstances, he could not prevail on his claim because Wells Fargo did not foreclose

3   and remains in compliance with the NMS.

4          Another significant difference between the two anti-dual tracking provisions relates to the

5   timing of receipt of the completed loan modification application.  Section 2923.6 does not

6   reference a time limit by which a borrower must submit his application in order to trigger the

7   lender's obligation to review and postpone foreclosure.  Theoretically, a borrower could submit a

8   completed application 10 minutes before the foreclosure sale and this section could arguably

9   require a postponement of more than 30 days.  As the product of negotiation, the NMS

10   eliminates the possibility of such a logistically impractical and procedurally unfair result.

11          Under the NMS, if the lender receives a completed loan application within 37 days of the

12   scheduled sale, the regular anti-dual tracking provisions do not apply.  Rather, if the application

13   is received less than 37 days but more than 15 days before the then scheduled sale, the lender is

14   only obligated to conduct an expedited review.  (RJN, Ex. 7 at A-19 to A-20 (para. 8)).  In that

15   case, the lender is only required to postpone the foreclosure "if the borrower is extended a loan

16   modification…"  (*Id.*, at A-20 (para. 8)).  Similarly, if a completed application is received less

17   than 15 days before a foreclosure sale, the NMS only requests that the lender notify the borrower

18   "before the foreclosure sale date as to Servicer's determination (if its review was completed) or

19   inability to complete its review of the modification application."  (*Id.* at A-20 (para. 9)).  And,

20   like the preceding paragraph, it does not prevent the lender from continuing with the foreclosure

21   unless the lender "makes a loan modification offer to the  borrower".  (*Id.*).

22          Thus, the concept of dual-tracking under the NMS is significantly different than under

23   HBOR.  HBOR prevents a lender from taking any of the interim steps associated with non-

24   judicial foreclosure as long as a completed loan modification application is under consideration

25   or for 31-days after denial.  The prohibited activity includes recording a notice of default, notice

26   of trustee's sale, or completion of the sale.  The NMS, on the other hand, prevents a "referral to

27   foreclosure" or the completion of a sale while the application is under review, but only if the

28   application is received timely, i.e., more than 37-days before the scheduled foreclose sale.  The

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   crucial difference is that under the NMS, the lender can record a Notice of Sale after receiving a

2   completed application more than 37 days before the then scheduled sale date, as long as it does

3   not go to sale while the application is pending.  If it receives the application within 37 days of the

4   sale, it can not only record appropriate notices, it can proceed to foreclosure unless it offers a

5   loan modification.  The NMS therefore provides a more flexible approach.  As long as Wells

6   Fargo was in compliance with the NMS provisions, Section 2924.12(g) makes the more stringent

7   provisions of Section 2923.6(c) inapplicable.  *Mitchell, supra,* 2014 U.S. Dist. LEXIS 7803, at

8   *14-15.

9       Wells Fargo referred Plaintiff's loan to foreclosure on September 23, 2013.  (FAC, Ex. B,

10   p.1).  A Notice of Trustee's Sale was issued on March 11, 2014 and recorded on March 13, 2014

11   with a sale date of April 3, 2014.  (RJN, Ex. 6).  Plaintiff's original complaint confirmed that the

12   April 3, 2014 foreclosure sale was postponed following his submission of additional documents

13   shortly before March 24, 2014.  (Comp. ¶30).  Plaintiff's alleged completed application was

14   provided within 37 days of the then scheduled sale date.  As of March 11, 2014, the sale was

15   scheduled for April 3, 2014.  (RJN, Ex. 6).  Plaintiff's submission of additional documents was

16   apparently received shortly before March 24, 2014.  This was well within 37 days of the sale,

17   and may have been less than 15 days before the scheduled sale.  In any event, the NMS did not

18   require a postponement of the sale unless Wells Fargo offered Plaintiff a modification.  It is

19   undisputed that it did not.  Wells Fargo therefore remained in compliance with the NMS and no

20   liability under Section 2923.6 can attach.

21       Moreover, the proper measure of Wells Fargo's compliance is not with respect to

22   Plaintiff's particular loan, it is shown by the report for the monitor appointed by the Consent

23   Judgment.  That is because, as the District of Columbia District Court explained, the Consent

24   Judgment is concerned with mortgage servicing, origination and certification in general, and not

25   any particular mortgage.  *Glaviano v. J.P. Morgan Chase Bank, N.A.*, No. 13-cv-2049, 2013 U.S.

26   Dist. LEXIS 180582, 2013 WL 6823122, at *1 n. 1 (D.D.C. Dec. 27, 2013).  Thus, compliance is

27   shown via a report issued by the monitor.  (RJN, Ex. 7 at E-10 (para. 3)).  Here, the monitor has

28   reported Wells Fargo's compliance.  (RJN, Ex. 8).  This fact alone should eliminate Plaintiff's

Anglin Flewelling Rasmussen Campbell & Trytten llp

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   HBOR claim.

2        This result is the same despite the California legislature's language in Section 2924.12(g)

3   granting safe harbor for compliance with the Settlement Term Sheet "with respect to the

4   borrower who brought an action pursuant to this section while the consent judgment is in

5   effect…"  That language creates an ambiguity and reveals a lack of understanding of the

6   compliance and enforcement provisions of the NMS.  A lender is in compliance with the NMS

7   not with respect to a particular borrower.  It is in compliance based on the metrics and reporting

8   of the monitor.[2]  (RJN, Ex. 7 at E-4 and E-10).  The monitor has found Wells Fargo to be in

9   compliance.  (RJN, Ex. 8).

10       The monitor's finding of compliance is significant and controlling for a number of

11  reasons.  First, as noted above, the Settlement Term Sheet itself defines compliance based on the

12  measurement metrics provided in Exhibit E-1 thereto.  (RJN, Ex. 7 at E-4 (para 11); *see also id.*

13  E-11 (para. E, defining potential violations)).  To the extent Section 2924.12(g) would require

14  the imposition of a different meaning of compliance, one that is specific to a particular borrower,

15  that would create a standard not found in the NMS and would require interpretation and

16  enforcement of the NMS, a prerogative that belongs only to the District Court for the District of

17  Columbia.  Put differently, if 2924.12(g) requires a Court to interpret and analyze the NMS in

18  order to determine whether a particular borrower can show non-compliance as to him or her, then

19  the statute would be interfering with the exclusive jurisdiction for such interpretation given to the

20  District of Columbia court.  Taking the monitor's report of compliance at face value avoids this

21  untenable and unworkable result.

22       Second, the Term Sheet requires that Wells Fargo remediate any violations identified by

23  the monitor to the extent those potential violations harm any particular borrowers.  (RJN, Ex. 7 at

24

25  ────────────────

26  [2] A "Potential Violation" of the Consent Judgment occurs "if the Servicer has exceeded the
    Threshold Error Rate set for a Metric in a given Quarter." Page 200 of NMS (Exhibit E to
    Consent Judgment, at page E-11).  The "Threshold Error Rates" are the method of determining

27  whether the lender has complied with the NMS based on Metrics. Page 193-194 of NMS
    (Exhibit E to Consent Judgment, at pages E-4 through E-5). Metrics are used for categories of

28  borrowers per specific terms of the NMS (e.g. servicing standards), not to protect individual
    borrowers. (Exhibit E-1 to Consent Judgment).

1   p.E-12, subp. 5),  Thus, the absence of any violations identified by the report necessarily means

2   there have been no borrowers identified who may have been harmed by the violation.

3          Third, requiring  proof of compliance with the entire NMS with respect to an individual

4   borrower makes little practical or equitable sense.  The monitor's report creates a presumption of

5   compliance as to individual borrowers.  To hold otherwise would require the bank to prove a

6   counterfactual: that it did not violate any of the dozens of provisions of the Settlement Term

7   Sheet, many of which would not apply to every borrower.  And, the process of making such a

8   showing would again amount to a type of enforcement action over which the District of

9   Columbia court has exclusive jurisdiction.

10         Fourth, using the monitor's report as establishing compliance is consistent with the fact

11  that individual borrowers are not parties to or intended beneficiaries of the NMS.  They therefore

12  lack standing to enforce it.  Proof of compliance (or violations) on an individual level would

13  have the effect of giving individual borrowers power to enforce the NMS despite the language of

14  the NMS itself and the great weight of authority holding that they have no such power.  The

15  California legislature cannot make individual borrowers third party beneficiaries to a contract

16  between banks and attorneys general through enactment of HBOR.

17         Wells Fargo's compliance with the NMS Settlement Term sheet is apparent from the face

18  of the complaint and the judicially noticeable monitor's report.  That compliance is fatal to

19  Plaintiff's attempt to enforce liability under Section 2923.6.

20  **4.   PLAINTIFF HAS NOT STATED A VIOLATION OF CIVIL CODE §2923.6**

21         Even if Wells Fargo's compliance with the NMS was not sufficient to eliminate

22  Plaintiff's first cause of action for violation of Civil Code §2923.6, the claim would still fail

23  because Plaintiff has not adequately articulated a violation of that section.

24         As Plaintiff acknowledges, Wells Fargo's obligation to consider the last in a long line of

25  Plaintiff's "countless" modification applications, would only be triggered under HBOR (or the

26  NMS) if: 1) the application was complete; and 2) there was a documented material change in his

27  financial circumstances that was submitted to Wells Fargo.  (Cal. Civ. Code §2923.6(g) and (h);

28  see also RJN, Ex. 7, at A-29 (para. 12).  Plaintiff's conclusory assertion of a material change in

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   circumstances is not sufficient to satisfy this requirement.  *See Ware v. Bayview Loan Servicing,*

2   *LLC,* 2013 U.S. Dist. LEXIS 163346, at *14-15 (S.D. Cal. Oct. 29, 2013) (motion to dismiss

3   Section 2923.6 claim granted because plaintiff failed to articulate a documented material change

4   in circumstances with anything more than an allegation and a letter claiming an increase in

5   expenses); *see also Williams v. Wells Fargo Bank, NA,* 2014 U.S. Dist. LEXIS 17215, at *15-16

6   (C.D. Cal. Jan. 27, 2014) (plaintiffs failed to state Section 2923.6 claim without articulating

7   changed circumstances or nature of documentation submitted).  Section 2923.6's dual tracking

8   restrictions are not triggered unless the borrower has submitted a *complete* application **and**, if the

9   borrower has been previously denied, that complete application included a documented change

10  in financial circumstances.  Cal. Civ. Code §2923.6(g) and (h).  The allegations here fail

11  adequately to state that either requirement was met.

12         Plaintiff merely concludes Wells Fargo "filed a notice of sale after Plaintiff submitted a

13  complete loan modification application."  (FAC ¶43).  It is not clear which of his "countless"

14  loan modification applications this refers to.  Wells Fargo certainly caused the March 11, 2014

15  Notice of Sale to be recorded after Plaintiff had submitted and Wells Fargo had denied his 2013

16  application.  But this is not a violation of HBOR.  He also vaguely alleges that he completed an

17  application form and provided documents at a "loan modification workshop" in 2014 (FAC ¶29-

18  30), but whether this was before or after the Notice of Sale was recorded is not stated.

19         The Complaint also fails to articulate that Plaintiff actually submitted a new, complete

20  modification application.  Rather, he claims that he submitted documentation regarding his

21  changed circumstances.  (FAC ¶40).  He does not say that this was a new and complete

22  application submitted prior to March 13, 2014.  And, contrary to his characterizations of Wells

23  Fargo's letter, Wells Fargo did not confirm or acknowledge that the material he submitted was

24  sufficient or a complete application package.  (FAC Ex. A).  That letter only acknowledges

25  receipt of some documents supporting Plaintiff's request for mortgage assistance.  It does not

26  acknowledge receipt of a loan modification application, let alone a complete application.  Rather,

27  it actually says that additional documents may be required and directs Plaintiff to its website

28  where it can review a list of the documents normally required.  Similarly, Wells Fargo's April

21, 2014 letter attached to the Complaint as Exhibit B does not acknowledge that Plaintiff has submitted a complete loan modification application or that he is under consideration for a modification.  Rather, it merely indicates that the loan is being reviewed for "payment assistance."  (FAC, Ex. B, p.2).  Plaintiff's contrary characterizations of the letters attached to the complaint give way to the actual contents of those documents.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Nor does Plaintiff adequately allege a documented material change in financial circumstances.  Rather, he merely offers a conclusion that he had such a change.  (FAC ¶40).  He does not state what documents he submitted to establish this change or why he believes such documentation was sufficient.  As such, the restrictions against recording foreclosure notices or even proceeding to sale do not apply and Plaintiff's Section 2923.6 claim fails.

Finally, Plaintiff is careful to avoid pleading that his modification application was or is still under review.  Rather, he claims that he did not receive a denial letter that conforms with the requirements of Civil Code §2923.6(f).  (FAC ¶46).  That is because he did receive a denial letter.  (RJN, Ex. 9).  He is apparently claiming that the contents of the letter fail to disclose the information required of Section 2923.6(f)(1) and (5).  (FAC ¶44).  He is wrong.  The letter advises that the application is incomplete and that he would need to provide additional documents if he wanted the application to be considered.  It advises Plaintiff of where to call to accomplish that, but advises that the foreclosure process will proceed.  (RJN, Ex. __).  Plaintiff does not allege that any other foreclosure prevention alternatives are applicable, but the letter does advise him to contact a HUD counselor to inquire.  (RJN, Ex. 9, p2).  Thus, the letter complies with Section 2923.6(f).

Moreover, federal law preempts state laws which impose disclosure requirements such as those in Section 2923.6(f) on a national bank or federal savings association.  "The National Bank Act (the "Act") vests national banks such as Wells Fargo with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" 12 U.S.C. § 24 (Seventh).  Real estate lending is expressly designated as part of the business of banking. 12 U.S.C. § 371(a).  *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554-555 (9th Cir.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

2010).  OCC regulation promulgated under the National Bank Act preempts any state law impeding or directing a national bank's: "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in … billing statements … or other credit-related documents".  12 C.F.R. §34.4(a)(9).[3]  Here, Section 2923.6(f) imposes specific disclosure requirements to be included in credit-related documents – specifically letters denying loan modification applications.  Such specific disclosure requirements are expressly preempted and may not serve as the basis for equitable or legal liability.  *See Rose v. Chase Bank USA, N.A.,* 513 F.3d 1032, 1038 (9th Cir. 2008) (the National Bank Act preempts affirmative disclosure requirements of a California statute, insofar as those requirements apply to national banks).

### 5.   PLAINTIFF HAS NOT PLED A CANCELLATION OF INSTRUMENT CLAIM

Plaintiff's next claim for relief tries to invoke HBOR to obtain an order cancelling the Notice of Trustee's Sale.  This remedy is not available and Plaintiff has not adequately pled the cause of action in any event.

HBOR provides two alternative remedies depending on the stage of the foreclosure process.  If the trustee's deed upon sale has been recorded, the borrower may pursue damages for an HBOR violation.  Cal. Civ. C. §2924.12(b).   If the deed upon sale has not been recorded, the borrower is limited to "injunctive relief to enjoin a material violation of Section … 2923.6."  Cal. Civ. C. §2924.12(a)(1).  The injunction may be lifted upon a showing that the violation has been remedied.  Cal. Civ. C. §2924.12(a)(2).  Nowhere does HBOR provide for an order cancelling instruments recorded purportedly in violation of the statute.  Rather, it provides for injunctive relief preventing violations.

Indeed, an order cancelling an instrument would be inconsistent with the express language of Section 2924.12.  That section provides that a servicer cannot be liable for any

---

[3] Plaintiff's loan was originated by World Savings Bank, FSB, a federal savings bank.  (RJN, Ex. 1).  As such, the loan itself is governed by regulations promulgated by the Office of Thrift Supervision (OTS) pursuant to the Home Owners Loan Act (HOLA).  **[cite]**.  Such regulations are even more sweeping than the OCC regulations and provide for field, not just conflict, preemption and would preempt all of HBOR.  **[cite]**.

violation of HBOR as long as the violation is remedied before recording of the trustee's deed upon sale.  Cal. Civ. C. §2924.12(c); see also §2924.12(a)(2) (allowing the servicer to seek to terminate an injunction upon a showing that the violation had been remedied).  If a borrower could void a notice of default or notice of sale, the lender would lose the ability to remedy a violation and these provisions of HBOR would be rendered meaningless.

In addition, Plaintiff has not and cannot plead a valid claim to cancel the notice of trustee's sale.  "The Court may order cancellation of an invalid written instrument that is void or voidable. Cal. Civ. Code §§ 3412, et seq."  *Compass Bank v. Petersen*, 886 F. Supp. 2d 1186, 1194 (C.D. Cal. 2012).  Plaintiff asserts that the notice of sale is void (FAC ¶51), but he is wrong.  As noted above, a violation of HBOR can be remedied.  If the notice was void, nothing a the servicer could do would revive it and any efforts at remediation would be ineffectual. Section 2924.12(a)(2) and (c) expressly allow for remediation which means that notices are not void.  Additionally, Section 2924.12(e) provides that even un-remedied violations do not affect the validity of title transferred via foreclosure to a bona fide purchaser for value.  If the notice was void, the title transferred pursuant thereto would also be void.  Subparagraph (e) eliminates that possibility.  As a result, the notice is not void and may not be cancelled.

Finally, any cancellation of foreclosure instruments must be accompanied by a tender of Plaintiff's debt.  "Courts have applied the tender rule to causes of action for cancellation of instruments pertaining to the foreclosure process. See *Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209, 1225-1226 (S.D. Cal. 2012); *Adesokan v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 15192, 2012 WL 395969, at *4 (E.D. Cal. Feb. 7, 2012)."  *Rockridge Trust v. Wells Fargo, N.A.*, C-13-01457 JCS, 2013 U.S. Dist. LEXIS 139606, at 117 (N.D. Cal. Sept. 25, 2013). In *Adesokan*, the court held that "[w]ithout a meaningful tender of the amount due, cancellation of the instruments is an empty remedy which the Court cannot convey." *Adesokan*, 2012 U.S. Dist. LEXIS 15192, 2012 WL 395969, at *4.  Plaintiff has not tendered his considerable debt and may not, therefore, cancel the notice of sale.

### 6.  PLAINTIFF CANNOT MAINTAIN A NEGLIGENCE CLAIM FOR DAMAGES

Plaintiff's third cause of action for negligence fails for a variety of reasons.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.: 4:14-CV-02389-CW
MOTION TO DISMISS

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   First, Plaintiff cannot articulate a duty of care that would support this claim.  He makes

2   the conclusory assertion that Wells Fargo owed him a duty of care in processing his loan

3   modification application.  (FAC ¶53).  This directly contradicts the true state of the law.  Rather,

4   a bank has "*no* duty of care when considering Plaintiffs' request for a loan modification because

5   'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a

6   lending institution's conventional role as a lender of money.'"  *Badame v. JP Morgan Chase*

7   *Bank, N.A.*, 2014 U.S. Dist. LEXIS 22164, at *19-21 (C.D. Cal. Feb. 13, 2014 (emphasis

8   added)(quoting *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013)); *see*

9   *also Deschaine v. IndyMac Mortg. Servs.,* 2014 U.S. Dist. LEXIS 8541, at *18-19 (E.D. Cal.

10  Jan. 22, 2014) (dismissing negligence claim based on processing modification application for

11  lack of duty of care).  The absence of a duty of care in the processing of a modification

12  application is fatal to this claim.

13  Second, Plaintiff has not articulated any damage proximately caused by the alleged

14  negligent loan modification processing.  Plaintiff does not and cannot allege that he is entitled to

15  a modification as a matter of right or to have his modification request processed at all.  *Roussel v.*

16  *Wells Fargo Bank*, C 12-04057 CRB, 2012 U.S. Dist. LEXIS 153798, at *19 (N.D. Cal. Oct. 25,

17  2012).  As such, whether or not Wells Fargo processed his request properly or not he has not

18  been harmed as a result.  Thus, the manner in which Wells Fargo processed a gratuitous

19  application to change the terms of his loans in a way that would only favor Plaintiff, did not

20  cause him any harm.  *Id .* ("Since Defendant had no duty to consider Plaintiff's loan

21  modification, Defendant's failure to properly consider Plaintiff's loan modification application

22  was not the cause of the imminent foreclosure of Plaintiff's home; rather, Plaintiff's default on his

23  mortgage caused the imminent foreclosure.")  He remains in the property and has not made a

24  mortgage payment in four years.  Wells Fargo has not foreclosed and Plaintiff retains possession.

25  Finally, Plaintiff's attempt to use his negligence claim to obtain damages based on a

26  purported violation of HBOR's dual-tracking provision (*see* FAC ¶54) also fails as a matter of

27  law.  HBOR provides for alternative and mutually exclusive forms of relief for purported

28  violations.  If the trustee's deed upon sale has not yet been recorded, then the borrower can

1   maintain an action for an injunction. However, if and only if, the deed upon sale has been

2   recorded, then the borrower can maintain an action for damages. Cal. Civ. C. §2924.12(b).

3   Here, the foreclosure has not happened and no trustee's deed upon sale has been issued or

4   recorded. Plaintiff is therefore limited to injunctive relief and cannot maintain a claim for

5   damages based on an alleged HBOR violation.

### 7. PLAINTIFF'S MISREPRESENTATION CLAIMS ARE IMPROPERLY PLED

7      Plaintiff's fourth and fifth claims for relief respectively assert negligent and intentional

8   misrepresentation claims based on the alleged statements: 1) that Wells Fargo was giving

9   Plaintiff a meaningful opportunity to be reviewed for a loan modification; and 2) Wells Fargo

10   wanted to help him avoid foreclosure. (FAC ¶¶58, 64). These vague and conclusory allegations

11   are insufficient to maintain either cause of action.

**A.**    <u>The Negligent Misrepresentation Claim Fails</u>

13      Plaintiff's negligent misrepresentation claim suffers from the same defect as his

14   negligence claim: the lack of a duty of care. See *Badame v. JP Morgan Chase Bank, N.A.*, No.

15   CV 13-5425 PA (FFMx), 2014 U.S. Dist. LEXIS 22164, 2014 WL 585451, at *7 (C.D. Cal. Feb.

16   13, 2014) (holding that absence of a duty to avoid negligence in processing modifications is also

17   fatal to claims for negligent misrepresentation). While it is clear that a negligence claim will not

18   lie for the manner in which a lender processes a modification application, some courts have

19   recognized that a negligent misrepresentation claim *may* lie for false or inaccurate statements

20   made in connection with the processing of a modification application. Even if the Court were

21   inclined to follow this line of authority, the allegations of Plaintiff's FAC do not fall within this

22   narrow exception.

23      The Fourth Appellate District of California Court of Appeal recently held that "a lender

24   does owe a duty to a borrower to not make material misrepresentations about the status of an

25   application for a loan modification or about the date, time, or status of a foreclosure sale."

26   *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 68-69 (2013). After affirming

27   dismissal of a negligence claim, the *Lueras* court remanded to allow the plaintiff to attempt to re-

28   plead a negligent misrepresentation claim based on inaccurate statements about the status of the

1  application or the timing of the foreclosure because it "is foreseeable that a borrower might be

2  harmed by an inaccurate or untimely communication about a foreclosure sale or about the status

3  of a loan modification application, and the connection between the misrepresentation and the

4  injury suffered could be very close." *Id.* at 69. In other words, the Court found that negligent

5  misrepresentation, as a specie of fraud, differed sufficiently from pure negligence to allow the

6  creation of a duty of care that would otherwise not exist. The dissent in *Lueras* very

7  convincingly disagrees with the majority's salvaging of the plaintiff's negligent misrepresentation

8  claim despite the absence of a duty of care. *Id.* at 94-95. Nonetheless, even if this Court were to

9  follow the *Lueras* majority's approach, the FAC here does not articulate an actionable negligent

10  misrepresentation claim.

11  To state a claim for negligent misrepresentation, plaintiff must plead: (1) a

12  misrepresentation of a past or existing material fact (2) without reasonable ground for believing

13  it to be true, (3) with intent to induce another's reliance, (4) justifiable reliance, and (5) resulting

14  damage. *National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp*.,

15  171 Cal.App.4th 35, 50 (2009). To satisfy the first element, the representation must one of an

16  existing fact and not a promise of something to happen in the future. *Tarmann v. State Farm

17  Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 159 (1991); *see also McLaughlin v. Aurora Loan Servs.,

18  LLC,* 2014 U.S. Dist. LEXIS 62142, at *19-20 (C.D. Cal. Apr. 28, 2014).

19  As a specie of fraud, claims for negligent misrepresentation must be pled with the

20  heightened particularity required by Rule 9. *Villegas v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist.

21  LEXIS 132511, at *22 (N.D. Cal. Sept. 17, 2012). This means the complaint must identify who

22  made the statement, state specifically what was said and when. *Ebeid ex. rel. United States v.

23  Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *Errico v. Pacific Capital Bank, N.A*., 753 F. Supp.

24  2d 1034, 1049 (N.D. Cal. 2010). It must also articulate the particular nature of plaintiff's

25  reliance on the statement and the resulting damages. *Corazon v. Aurora Loan Servs*., 11-00542

26  SC, LLC, 2011 U.S. Dist. LEXIS 97333, at *14 (N.D. Cal. Aug. 30, 2011).

27  The FAC falls well short of pleading the facts necessary to maintain a negligent

28  misrepresentation claim. As a threshold matter, the exact nature of the representation is very

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   difficult to glean.  Plaintiff provides two purported statements in Paragraph 58 of the FAC;

2   neither of which appear to be statements of existing material fact.  The first, that Wells Fargo

3   would give him a meaningful opportunity to be reviewed for a modification appears to be a

4   statement about future conduct and an opinion.  Whether the opportunity was "meaningful" is

5   purely a matter of opinion and a statement of fact.  The second, that Wells Fargo wanted to help

6   him avoid foreclosure, is also a statement of opinion and also relates to future conduct.  It is not

7   an actionable statement of material fact.  Obviously, a business entity such as Wells Fargo has

8   not emotions or desires and cannot "want" anything.  A statement about what it may want,

9   therefore, is nothing more than a statement of opinion.

10      Plaintiff also provides no facts supporting who made the statements, when they were

11  made, or what he did in reliance.  Plaintiff provides only the conclusory allegations of justifiable

12  detrimental reliance.  (FAC ¶60-61).  He does not say what he actually did in reliance or how he

13  was harmed.  Such allegations are insufficient to survive a motion to dismiss.

14  **B.      The Fraud Claim Lacks Required Detail**

15      The fraud claim merely repeats the same allegations as the negligent misrepresentation

16  claim, except it makes the conclusory statement that the misrepresentations were intentional

17  rather than negligent.  (FAC ¶65).  It fails to provide any more details as to who made any

18  statements, when they were made, what Plaintiff did in reliance, or how he was damaged as a

19  result.  By failing to plead any specifics, Plaintiff has failed to plead an actionable fraud claim.

20      Even if Plaintiff could add details as to who made the statements or when, the claim

21  would still fail because it is based entirely on non-actionable statements of opinion.  To support

22  fraud, an "alleged misrepresentation must ordinarily be an affirmation of past or existing facts."

23  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999);

24  see also *Gentry v. eBay, Inc*., 99 Cal. App. 4th 816, 835 (2002) ("expressions of opinion are not

25  generally treated as representations of fact, and thus are not grounds for a misrepresentation

26  cause of action").  Further, "[t]he alleged misrepresentation must also ordinarily be a specific

27  factual assertion; generalized statements are usually not actionable as fraud. . . ." *Glen Holly*

28  *Entertainment*, 100 F. Supp. 2d at 1093.  The statements here are just the type of generalized

1    statements of opinions that courts routinely find insufficient to support a fraud claim.

2           No amount of additional detail on who made the statements, when or what Plaintiff did in

3    reliance will make the statements actionable misstatements of fact and the misrepresentation

4    claims should be dismissed with prejudice.

5                                           **8.   CONCLUSION**

6           For the foregoing reasons, Wells Fargo respectfully requests the court dismiss the

7    complaint with prejudice.

8                                                 Respectfully submitted,

9    Dated:  July 7, 2014                         ANGLIN, FLEWELLING, RASMUSSEN,
                                                  CAMPBELL & TRYTTEN LLP
10

11                                                By:   /s/ Robert A. Bailey
                                                     Robert A. Bailey
12                                                   rbailey@afrct.com
                                                  Attorneys for Defendant
13                                                WELLS FARGO BANK, N.A

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing documents entitled:

**WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

on the interested parties in said case as follows:

**Served Via the Court's CM/ECF System:**

| *Attorneys for Plaintiff:* | *Counsel for Defendant NDeX West* |
|---|---|
| David Pivotrak, Esq.<br>PIVTORAK LAW FIRM<br>180 Montgomery St., Suite 2000<br>San Francisco, CA 94104 | Edward A. Treder, Esq.<br>BARRETT DAFFIN FRAPPIER<br>TREDER & WEISS, LLP<br>20955 Pathfinder Road, Suite 300<br>Diamond Bar, CA 91765 |
| T: (415) 484-3009 \| F: (877) 748-4529<br>Email: pivtoraklaw@gmail.com | T: (626) 915-5714 \| F: (909) 595-7640<br>Email: edwardt@bdfgroup.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **July 7, 2014**.

_____
Maureen Courtney
(Type or Print Name)

_____
*/s/ Maureen Courtney*
(Signature of Declarant)