Robert A. Bailey (# 214688)
rbailey@afrct.com
ANGLIN FLEWELLING RASMUSSEN
CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel.: 626.535.1900 | Fax: 626.577.7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

KEVIN E. GILMORE, an individual

Plaintiff,

vs.

WELLS FARGO BANK, N.A., a national bank; NDEX WEST, LLC, a Delaware limited liability company; and DOES 1-10, inclusive

Defendants.

Case No.: 4:14-cv-02389-CW

[*Assigned to the Hon. Claudia Wilken*]

**DEFENDANT WELLS FARGO'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

Date: July 30, 2015
Time: 2:00 p.m.
Ctrm.: 2

## TABLE OF CONTENTS

1. INTRODUCTION ..... 1
2. PLAINTIFF CANNOT AVOID SUMMARY JUDGMENT BASED ON CLAIMS OR ARGUMENTS FALLING OUTSIDE THE SAC ..... 1
3. PLAINTIFF FAILED TO PRESENT EVIDENCE OF A DISPUTED ISSUE OF FACT AS TO FUNDAMENTAL ISSUES ..... 2
   **A.** Plaintiff Failed to Show Owner Occupancy ..... 2
   **B.** Plaintiff Failed to Show that His Modification Application Was Complete ..... 4
   **C.** Plaintiff Provides No Admissible Evidence of Harm or An Extant Violation ..... 7
4. PLAINTIFF'S HBOR CLAIM REMAINS INDEPENDENTLY FLAWED ..... 8
5. PLAINTIFF CANNOT SAVE HIS NEGLIGENCE CLAIM ..... 9
   **A.** Plaintiff's Claim Based on the Alleged Breach of the Duty to Process the Modification Application Fails. ..... 10
   **B.** Plaintiff's Claims Based on Inaccurate Information Remained Hopelessly Flawed ..... 12
   **C.** Plaintiff's Final Claim of Negligence Has Become Indistinguishable from His First ..... 14
   **D.** Plaintiff's Duty of Care Analysis is Flawed ..... 14
6. CONCLUSION ..... 15

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 2

*Bias v. Moynihan*,
508 F.3d 1212 ........ 2

*Coleman v. Quaker Oats, Inc.*,
232 F.3d 1271 (9th Cir. 2000) ........ 2

*Disc Golf Ass'n v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) ........ 6

*Hamilton v. State Farm Fire and Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ........ 10

*Hernandez v. Select Portfolio Servicing, Inc.*,
2015 U.S. Dist. LEXIS 82922 (C.D. Cal. June 25, 2015) ........ 1, 11

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ........ 6

*Nintendo of Am. v. Lewis Galoob Toys*,
16 F.3d 1032 (9th Cir. 1994) ........ 12

*Rockridge Trust v. Wells Fargo, N.A.*,
985 F. Supp. 2d 1110 (N.D. Cal. 2013) ........ 1

*Sea-Land Serv. v. Lozen Int'l, LLC*,
285 F.3d 808 (9th Cir. 2002) ........ 6

*Sternberg v. Johnston*,
595 F.3d 937 (9th Cir. 2009) ........ 12

*Universal Life Church v. United States*,
1972 U.S. Dist. LEXIS 14802 (E.D. Cal. 1972) ........ 4

**STATE CASES**

*Biakanja v. Irving*,
49 Cal.2d 647 (1958) ........ 9, 14, 15

*Mabry v. Superior Court*,
185 Cal. App. 4th 208 (2010) ........ 1

*Nymark v. Heart Fed. Sav. & Loan Assn.*, 23 Cal.App.3d 1089 (1991) ..........14

*Pope v. State Bd. of Equalization*, 202 Cal. App. 3d 73 (1988) ..........4

*Tarmann v. State Farm Mutual Auto Review Ins. Co.*, 2 Cal.App.4th 153 (1991) ..........13

**FEDERAL STATUTES**

12 U.S.C. § 1461, et seq. ..........2

15 U.S.C. § 1681t(b)(1)(F) ..........12

**STATE STATUTES**

Cal. Civ. Code § 2923.6 ..........3, 7, 8, 9

Cal. Civ. Code § 2924.12(a) ..........9

Cal. Bus. & Prof. Code §§ 17200 and 17204 ..........15

**RULES**

Fed. R. Civ. P. 9 ..........12, 13

Fed. R. Civ. P. 26 ..........11, 12

Fed. R. Civ. P. 56(e) ..........2

Fed. R. Civ. P. 65 ..........2

## 1. INTRODUCTION

Plaintiff's Opposition to Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment (the "Motion") concedes more than it disputes. The Opposition consists of largely irrelevant and unsupported arguments that have no bearing on the issues raised by the Motion and the operative Second Amended Complaint ("SAC"). Rather, the Opposition is more of a polemic about the lending industry and loan modifications in general, than it is a meaningful attempt to overcome the issues raised by the Motion itself.

Try as he might, Plaintiff cannot escape his own deposition testimony. He simply cannot avoid the facts that the property was not owner-occupied, his application was incomplete, and he did not suffer any harm. Wells Fargo is entitled to judgment as a result.

## 2. PLAINTIFF CANNOT AVOID SUMMARY JUDGMENT BASED ON CLAIMS OR ARGUMENTS FALLING OUTSIDE THE SAC

Plaintiff's Opposition consists mostly of argument unsupported by facts or legal authority. Indeed, much of it reads like a criticism of the regulatory and legislative scheme governing lenders. (See, e.g. Oppn. at 16-17). These views are better directed towards the legislative and executive branches, not the judicial.

Much of the Opposition is inapplicable to the surviving allegations in the SAC. For example, Plaintiff attacks Wells Fargo's underwriting decisions not to offer him a modification. (Oppn. at 12 and 15-16). Yet, the SAC is based on alleged dual-tracking. It does not, and could not, assert a claim that he was improperly denied a modification. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1130 (N.D. Cal. 2013). Any such claim would be legally impermissible. *See Hernandez v. Select Portfolio Servicing, Inc.,* 2015 U.S. Dist. LEXIS 82922, at *58 (C.D. Cal. June 25, 2015); *Mabry v. Superior Court,* 185 Cal. App. 4th 208, 222 (2010).

Plaintiff also references modification applications submitted in March, 2012 (Oppn. at 5:14-18) and October, 2012 (Oppn. at 19:13-18), and a notice of trustee's sale dated September 21, 2012. (Oppn. at 20:8-9). He discusses alleged credit reporting in 2012 and 2013 during the pendency of his bankruptcy. (Oppn. at 13:21-23). He also claims Wells Fargo did not have an online portal for him to check the status of his modification. (Oppn. at 18:17-18). He submits a

declaration and documents about a trip Ms. Stepanski apparently won in 2012 but did not take because of Wells Fargo's attempt to foreclose at the time. (Stepansky Decl, ¶4, Ex. 5). And, he claims that Wells Fargo has failed to apply the bond payments he has made in order to keep the injunction in place to his loan.[1] (Oppn. at 5:3-12 and 21:19-21). But none of this has anything to do with the dual tracking and negligence claims surviving in the SAC. Plaintiff cannot avoid summary judgment with such extraneous material and argument. C*oleman v. Quaker Oats, Inc*., 232 F.3d 1271, 1291-94 (9th Cir. 2000).

**3. PLAINTIFF FAILED TO PRESENT EVIDENCE OF A DISPUTED ISSUE OF FACT AS TO FUNDAMENTAL ISSUES**

Although Plaintiff fails to meaningfully or convincingly address the vast majority of the Motion and Wells Fargo's evidence, three key shortcomings are fatal to his case. First, Plaintiff does not establish that the Property was owner-occupied at the time of the alleged Home Owners Loan Act ("HBOR") violation. Second, Plaintiff cannot overcome Wells Fargo's showing that his loan application was incomplete. Finally, Plaintiff failed to show any harm stemming from the alleged handling of his modification application.

Plaintiff bore the burden of proof on these issues. Wells Fargo presented evidence showing a lack of evidence to support Plaintiff's claims as to each of them. The burden therefore shifted to Plaintiff to present *admissible* evidence of a disputed issue of material fact. FRCP 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). He failed to carry this burden and Wells Fargo is entitled to summary adjudication as to each of these points. *See Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007

**A. Plaintiff Failed to Show Owner Occupancy**

Wells Fargo cited extensive portions of Plaintiff's own deposition testimony and sworn discovery responses in which he admitted that he does not live at the Property and did not do so

[1] Why he would think that this was required, or even possible, under the terms of the injunction and FRCP 65 is not clear. What is clear is that the injunction bond payments are just that. They are not mortgage payments. (See Dkt. #44 at 15-16 (requiring Wells Fargo's counsel to accept the payments and place them in its firm's client trust account).)



ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

in March. (See Motn. at 7-8). Plaintiff does not dispute that proof of owner-occupancy is a necessary prerequisite to his HBOR and negligence claims. Yet, he fails to overcome Wells Fargo's showing that the Property was ***not*** owner-occupied.

Plaintiff's attempt to address this threshold issue is limited to a single paragraph on page 7 of the Opposition. Plaintiff relies on two purported pieces of evidence in an effort to overcome his deposition testimony and discovery responses. Neither of them is of any evidentiary value and neither overcomes Plaintiff's own admissions.

First, Plaintiff claims that the "City of Berkeley issued Plaintiff owner-builder permits". (Oppn. at 7:8-9). To support this assertion, he cites to an exhibit to Ms. Stepanski's declaration which she describes as: "The City of Berkeley's Department of Planning & Development's public records of Parcel Conditions and Permit History on the 955 Virginia Street Address . . . ." (Stepanski Decl., ¶7, Ex. H). This document is hearsay and is not properly authenticated. There is no indication of just what it represents, how it is maintained, who inputs the information in it, or when. Even if it was admissible, the document says nothing about any "owner-builder" permits being issued. It just lists a number of events and permits from 2010-2011, which predate the March, 2014 time in question by at least three years. It also says nothing about "owner-builder" permits. Even if it did, there is no indication as to what an "owner-builder" permit is or what it has to do with owner-occupancy. This document is useless to Plaintiff.

Second, Plaintiff refers to a "Homestead Exception" he received for the Property from the Alameda County tax assessor. (Oppn. at 7:9-10). This too is supported only by inadmissible hearsay and is not supported by the evidence cited. Plaintiff provides the tax assessor's statement saying that it has provided him a "homeowner's exemption" of $7,000 from his annual property taxes. (Gilmore, Ex. I). However, the letter relates to the 2014-2015 tax year and is dated July 18, 2014. (*Id.* at p.30). It does not say anything about occupancy in March, 2014. Similarly, the letter lists the homeowner's exemption but does not make a determination that Plaintiff qualified for it or that the property was, in fact, owner-occupied. Rather, it says "The Assessed Value shown, minus any exemptions for which you *may* qualify, will be the basis for your 2014-2015 property tax bill." (*Id.* (emphasis added)). It does not say that he does qualify

for it, the criteria for determining qualification, or what the County may have done to determine his eligibility. The first page specifically advises the taxpayer that if the notice includes an amount for the homeowner's exemption "and you no longer qualify, please call (510) 272-3770." (*Id.* at p.29). Thus, the listing of the exemption on the notice in no way indicates a finding that Plaintiff did qualify.

Regardless, even if the County Assessor provided Plaintiff with the homeowner's exemption for the 2014-2015 tax year, that is not evidence of the underlying fact that the Property was, indeed, owner-occupied or that Plaintiff was even entitled to the exemption. *See Universal Life Church v. United States,* 1972 U.S. Dist. LEXIS 14802, *2 (E.D. Cal. 1972) (in considering non-profit's claim for tax except status, the court noted that "that evidence of state and local tax exemptions is neither conclusive nor even relevant to the question of whether plaintiff is in fact operated exclusively for religious purposes under federal tax law"); *see also Pope v. State Bd. of Equalization,* 202 Cal. App. 3d 73, 84 (1988) (the burden of proof concerning the right to a tax exemption is on the taxpayer). Thus, Plaintiff's reliance on this document as evidence that the property was owner-occupied in March, 2014, or any other time, is wholly misplaced.

Perhaps most telling in Plaintiff's approach is the glaring absence of a statement by Plaintiff (or Ms. Stepanski) averring that Plaintiff actually lived on the Property in March, 2014. Plaintiff wisely avoids the perjury that any such declaration would have represented; however, he also concedes the lack of owner-occupancy in March, 2014 and the present.

**B. <u>Plaintiff Failed to Show that His Modification Application Was Complete</u>**

The Motion demonstrated that Plaintiff's March 12, 2014 modification application was not complete. Plaintiff responds first by apparently inviting the Court to assume the role of a loan underwriter and decide whether it believes the documents he provided were enough for the bank to make a lending decision. (Oppn. at 7:22-8:2). How or why the Court would engage in such a non-judicial function is not at all clear.

Plaintiff next looks to Wells Fargo's logs of the notes relating to the processing of his application to argue that it was complete. (Oppn. at 3:1-7 and 8:3-9). Nothing in those logs

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

indicates the application was complete and Plaintiff's speculative interpretation of the entries is misguided.

Plaintiff believes the logs do not indicate that the application was incomplete until 5:55:31 PM on March 13, 2014. (Oppn. at 3:2-6). This misreads the document, but why Plaintiff believes his case is helped by a determination that his application was incomplete the day after he submitted it is not at all clear. In any event, the records he cites actually show that the application was deemed incomplete on the day he submitted it, March 12, 2014. As of 5:47:29 PM on March 13, 2014, the logs indicate:

> *****MISSING INCOME DOCUMENTS HP (OR ESCALATION) UNDERWRITING*****
> Revised documents imaged through 3/12/2014. Still need the following:
> 1.Appraisl
> 2.CBR non borrower.

(Turner Decl., Ex. 15 at p.15 (bold added)).

Plaintiff also misinterprets this entry to mean that the only action needed to make the application complete was to be taken by the bank.[2] (Oppn. at 8). To reach that conclusion he has to ignore the capitalized statement: "MISSING INCOME DOCUMENTATION". It also assumes, without support, that the items listed represent all that was needed. Plaintiff's rank speculation is not supported by the record and is actually contradicted by it.

The entries made subsequently only confirm the incompleteness. Wells Fargo's employees repeatedly reference missing income documents as well as other documents needed. (Turner Decl., Ex. 15, p. 14-15). Notwithstanding Plaintiff's strained and unsupported interpretation, this document establishes that Wells Fargo did not consider the March 12, 2014 application to be complete at any time.

Plaintiff also purports to dispute receipt, and even the existence, of the March 14, 2014 letter from Ms. Nuncio in which Wells Fargo identified an additional document needed. (Oppn. at 4:21-35). Plaintiff does not dispute that he did not provide any additional documents after March 12, 2014. Thus, he is left disputing that he was asked to provide any. His current claim

---

[2] Plaintiff guesses, without any foundational support, that "CBR non-borrower" relates to a credit report Wells Fargo was to obtain for the non-borrower. (Oppn. at 8:3-7.)

that he did not receive the March 14, 2014 letter amounts to a sham declaration which directly contradicts his deposition testimony.

During his deposition, Wells Fargo's counsel pulled the original of the March 14, 2014 letter from the documents Plaintiff himself produced at the deposition. (Bailey Decl., Ex. 7 at p.72 (Depo. Tr. at 190:2-25).) He copied the letter and made it Exhibit 40 to the deposition.[3] (Bailey Decl., Ex. 7 at p.72 (Depo. Tr. at 190:2-8)). The following exchange then took place:

Q: Do you recall receiving this document shortly after March 14, 2014?
A: Shortly after March 13th?
Q: 14th, 2014.
A: I remember receiving this document, yes.
Q: And this was a letter from Sarah Nuncio?
A: Yes.
Q: And this document asks for an additional homeowners assistance form to be completed, signed and dated in order to process your loan modification request; correct?
A: Yes.

(Bailey Decl., Ex. 7 at p.72 (Depo. Tr. at 190:12-24)). Plaintiff himself brought the original of the letter with him to the deposition and freely acknowledged receiving it. He cannot escape it.

Plaintiff cannot avoid summary judgment "merely by contradicting his . . . own sworn deposition testimony with a later declaration." *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998); *see also Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 820 (9th Cir. 2002). Such declarations are sham and must be rejected. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991). Plaintiff thus cannot escape the fact that Wells Fargo asked for more information in order for his application to be considered complete but that he did not provide it. (See Bailey Decl., Ex. 7, at p. 67 (Depo. Tr. 175:6-14)).

Similarly, Plaintiff offers no response to Wells Fargo's showing that after March 12, 2014, it specifically called and asked Plaintiff (in his words) for "a more accurate profit and loss statement". (Bailey Decl., Ex. 7 at p. 71 (Depo. Tr. 179:4-5)). Nor does he deny that he did not provide anything between March 12, 2014 and May 28, 2014 when Wells Fargo issued its denial letter based on Plaintiff's failure to provide requested documents.

---

3 Plaintiff claims to be unable to find the letter in Wells Fargo moving papers. (Oppn. at 4) It is included as Bailey Decl., Ex. 12 and referenced as being there on page 10 of the Motion.

Plaintiff's only response is to make the demonstrably false assertion that he had provided a profit and loss statement for the previous 90-days. (Oppn. at 8:10). He does not and cannot deny that he was specifically told to bring a 90-day profit and loss statement and promised to do so. (Bailey Decl., Ex. 15 at p. 108-09 (Call Tr. 16:23-17:3) Yet, the profit and loss statement he did provide only covered 71 days (Jan. 1 to Mar. 12, 2014). (Gilmore Decl., Ex. K). Thus, his own documents belie his claim that he provided the required materials.

Plaintiff bore the burden of presenting admissible evidence to show that his application was complete. He could not remember what he submitted at the March 12, 2014 seminar and his attempt to show a completed application using Wells Fargo's own documents has backfired.

**C. <u>Plaintiff Provides No Admissible Evidence of Harm or An Extant Violation</u>**

The Motion also demonstrated that Plaintiff has no evidence of any harm, past or ongoing, relating to the processing of his loan modification application. As such, he cannot maintain either his HBOR claim or a negligence claim for damages. Plaintiff fails to offer any meaningful retort to this argument.

The Motion pointed out that any HBOR claim challenging the recording of the Notice of Trustee's Sale has been rendered moot because the Notice of Trustee's Sale expired and is now void as a matter of law. Plaintiff says nothing in response and apparently concedes the point.

The Motion also pointed out that Wells Fargo provided Plaintiff a subsequent modification review (even though the prior application was incomplete and even though Wells Fargo has since learned that the Property was not owner-occupied). This review again concluded that Plaintiff did not qualify for a modification. While Plaintiff may disagree with the calculations, he did not and does not dispute that Wells Fargo undertook to review the application (which was his 11th). (Oppn. at 4:8-13).

In his declaration, Plaintiff claims that his former counsel misrepresented or failed to advise him that the materials he submitted in September 2014, were for the purpose of another modification application.[4] (Gilmore Decl., ¶16). Be that as it may, it does not change the fact

---

[4] This assertion makes little sense given Plaintiff's express appeal of the denials of the September 2014, application. (Turner Decl., Exs. 19).



ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

that Plaintiff provided a new, completed application, which Wells Fargo reviewed and denied.[5] As a result, Plaintiff has no modification application pending and no basis to maintain his claim for relief under HBOR.

Similarly, as discussed in greater detail below, Plaintiff failed to present any evidence of damages or causation to support his negligence claim. He cannot escape the fact that he did not qualify for a loan modification. Thus, the claim that it was mishandled could not cause any harm because no matter how it was handled, he still would not have received a modification.

Because Plaintiff has no admissible evidence of any ongoing harm or recoverable damages, his claims are doomed.

**4. PLAINTIFF'S HBOR CLAIM REMAINS INDEPENDENTLY FLAWED**

As discussed above, Wells Fargo is entitled to judgment on Plaintiff's HBOR claim because the property was not owner-occupied, his application was incomplete, and the claim was rendered moot by the expiration of the Notice of Sale and a subsequent modification review. Even though any one of those reasons is enough for Wells Fargo to prevail, several additional defects in Plaintiff's evidence further justify the judgment sought by the Motion.

First, attempts to establish the completeness of his application with a statement that on March 12, 2014, he "submitted 17 pages of Wells Fargo bank statements reflecting self-employment income for the dates of December 11, 2013 through March 11, 2014." (Gilmore Decl., ¶10). This directly contradicts his earlier deposition testimony where he said he did not know what he submitted, other than an RMA form. (Bailey Decl., Ex. 7 at p. 37 (Depo. Tr. 20:14-16). It also contradicts the document attached to his deposition which included only eight pages of bank statements. (Bailey Decl., Ex. 10). And, Plaintiff's attempt to characterize the contents of the documents is inadmissible hearsay.

Second, Plaintiff fails to adequately address the telephone call he had with Wells Fargo the day before the Workshop. He cannot dispute that he was superficially advised of a number of documents needed including Ms. Stepansky's profit and loss statement, her tax returns, and

---

[5] Notably, this was not an attempt to cure an HBOR violation because there was no HBOR violation. Rather, as Plaintiff admits, this was simply another review. (Oppn. at 4:2-3).

proof of residency. (Bailey Decl., Ex. 15 (Call. Tr. at 22-29)). Since Ms. Stepansky was contributing 100% of her income to the household expenses, Wells Fargo identified all those materials as necessary for Plaintiff's application to be complete. (*Id.*). Both Plaintiff and Ms. Stepansky conspicuously avoid saying that they provided those materials on March 12, 2014. Thus, Plaintiff is left with a glaring gap in his evidence. Wells Fargo idenfied the necessary documents for the application to be complete. Plaintiff identifies some of the documents he provided, but cannot say that he provided everything.

Third, Plaintiff failed to show a documented material change in financial circumstances. Plaintiff's complaint and preliminary injunction application asserted, without any real proof, that his March 12, 2014 application included a documented material change in his financial condition from his prior applications. Now, at the summary judgment stage, Plaintiff bore the burden of proof to support this assertion with evidence. Wells Fargo met its initial burden by showing that his applications failed to document such a change. (See Motn. at 11-12). Plaintiff's only response is to cite not to his own declaration but that of Ms. Stepansky. (Oppn. at 9:1-3). Yet, the cited portion of Ms. Stepansky's declaration says nothing about any material which documented a change in Plaintiff's financial circumstances vis-à-vis his prior application. His dual-tracking fails as a result.

Finally, Plaintiff cannot overcome his admission that no one currently resides at the property. As such, HBOR no longer applies and there is no basis for an "injunction to prevent a violation" of HBOR. (See Cal. Civ. C. §2924.12(a)). Because no trustee's deed has been recorded, there is no possible remedy available to Plaintiff and the claim is moot.

**5. <u>PLAINTIFF CANNOT SAVE HIS NEGLIGENCE CLAIM</u>**

Plaintiff attempts to save his negligence claim with a long discussion of a duty of care analysis. This analysis is disjointed and unpersuasive. However, the Court need not wade into the morass of that discussion when Gilmore has failed to present admissible evidence of a breach, damages or causation. If the court does turn to the duty of care element, it will also find that Plaintiff fails to establish the existence of such a duty; even under the *Biakanja v. Irving*, 49 Cal.2d 647 (1958) factors.

**A. Plaintiff's Claim Based on the Alleged Breach of the Duty to Process the Modification Application Fails.**

In the Opposition, Plaintiff does not dispute that his negligence claim regarding the processing of the modification application hinges on the existence of a completed loan modification application. Thus, he continues to claim the March 12, 2014 application "was mishandled" precisely because he contends he provided all the required documentation and filled out the required forms. (Oppn. at 19:5-10). As noted above, there is no admissible evidence supporting this allegation.

To support his suggestion that the application was complete, Plaintiff cites: "Stepanski Decl. ¶2; Gilmore Decl., Ex. J, K, L". (Oppn. at 19:10). But these materials are not sufficient to establish the underlying issue: was the application complete. Indeed, the Stepanski declaration is directly at odds with Mr. Gilmore's deposition testimony and the declaration he submitted in order to obtain a preliminary injunction. In his deposition, he indicated that he did not provide any new since his prior applications except signatures. (Bailey Decl, Ex. 7 at p 35 (Dep Tr. 8:10-14). And, in his prior declaration he acknowledged that he and Ms. Stepanski could not provide all the required information needed for her inclusion in the application. (Supp. Gilmore Decl. ISO OSC (Dkt #22-1), ¶34). The Court relied on that declaration in issuing the preliminary injunction and Plaintiff is judicially estopped from contradicting it now. *See Hamilton v. State Farm Fire and Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001). Moreover, Plaintiff cannot avoid the fact that he was told on March 11, 2014 to bring Ms. Stepanski's tax returns, profit & loss statements, bank statements and proof of occupancy in the form of a utility bill or similar document. (Bailey Decl., Ex. 15 at 117-19 (Call Tr. 26:3-15 and 27:1-28:25)). Plaintiff admitted that he did not provide such documents. (Supp. Gilmore Decl. ISO OSC (Dkt #22-1), ¶34). The declarations and documents cited in the Opposition do not and cannot contradict this fact. Thus, Plaintiff did not establish that he provided all the required documents. Because Plaintiff concedes Wells Fargo's duty to process his application in a certain way depends on the precondition of a completed application, the failure to prove the existence of this condition..

Additionally, Plaintiff does not present evidence as to what Wells Fargo specifically did

in breach of its duties. Plaintiff's discovery responses were so vague and evasive as to establish his inability to prove a breach. (Motn. at 20). In order to overcome Wells Fargo's motion, therefore, Plaintiff was required to present admissible evidence of specific conduct amounting to a breach of duty. He did not.

The evidence shows that the sale date was set before the March 12, 2014 Workshop, but that the County Recorder did not record the Notice of Sale until March 13, 2014. (Turn Decl. ¶17, Ex. 22). Plaintiff does not adequately dispute that over the subsequent days and weeks, Wells Fargo contacted by letter and telephone calls to advise him of additional documents needed in order for his application to be complete. And, he does not dispute that he failed to provide *anything* in response to these repeated requests. Plaintiff provides no evidence, or even argument, that would support that this sequence is sufficient to establish a breach of any duty relating to the processing of the application. He provides no evidence as to a standard of care that would suggest that any of these actions fell below that standard. In short, Plaintiff does not present any evidence as to what Wells Fargo should have done differently in the processing of his incomplete application.

Finally, Plaintiff fails to present any evidence that the manner in which the application was processed proximately caused him any harm. The fact that a new application was subsequently processed in September 2014, confirms that had the March 2014 been deemed complete and fully processed, it would have resulted in a denial of the modification. Nor does Plaintiff present any evidence to the contrary. Indeed, he admits that a Wells Fargo employee told him the amount of equity in the property would make the modification impossible (See Motn. at 17). Thus, Plaintiff presents no evidence showing that the manner in which the first application was processed or not processed directly caused him any harm. *See Hernandez, supra*, 2015 U.S. Dist. LEXIS 82922, at *58-59 ("and because she does not plead facts suggesting there was a reasonable likelihood that her loan modification application would have been approved absent defendants' purported negligence, her damages allegations are deficient.").

Plaintiff now claims three types of damages, none of which are set forth in his Rule 26 disclosures. Even if the Court were to overlook that fata defect, it would not find any evidence

of actual damages caused by anything Wells Fargo did.

Plaintiff claims damages in the form of legal expenses incurred in obtaining his ill-gotten injunction. (Oppn. at 21:15-16). Yet, he offers no response or dispute to the authorities holding that such legal expenses are not a proper measure of damages for a negligence claim. *Sternberg v. Johnston*, 595 F.3d 937, 947 (9th Cir. 2009). Plaintiff next claims false credit reporting. (Oppn. at 21:16-19). He does not articulate what is false about the reporting. This claim is neither specially pled as required by Rule 9 or articulated in his Rule 26 disclosures, and such claims would be preempted by the Federal Fair Credit Reporting Act. *See* 15 U.S.C. § 1681t(b)(1)(F). In any event, Plaintiff provide any evidence of any actual damage stemming from such reporting. There is no evidence that he applied for and was denied credit or had to pay higher costs for credit as a result of anything Wells Fargo reported. Finally, claims damage because his injunction bond payments have not been applied to his loan. (Oppn. at 21:19-21). Plaintiff does not seem to realize that those were not mortgage payments. They are security for the harm Wells Fargo will suffer as a result of an improvidently awarded injunction. *Nintendo of Am. v. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir. 1994).

In ruling on Wells Fargo's motion to dismiss, the Court specifically relied on Plaintiff's allegation that he lost the opportunity to find alternative ways to satisfy his mortgage debt." (Dkt. #56, citing FAC ¶56). However, as noted in the Motion, Plaintiff has no evidence of any such lost opportunity or resulting harm. Plaintiff made no effort to address this fact and instead relies only on claims relating to attorneys' fees and accounting of his injunction bond payments. This is not good enough. Without evidence of cognizable damages, Plaintiff's claim fails and Wells Fargo is entitled to damages.

**B. <u>Plaintiff's Claims Based on Inaccurate Information Remained Hopelessly Flawed</u>**

In the Motion, Wells Fargo demonstrated that Plaintiff's identified information from 2012 as the basis for his "inaccurate information" portion of his negligence claim. (Motn. at 21). Plaintiff did not argue that his discovery responses included a typographical error and really involved communications from 2014. Thus, he has conceded the accuracy of Wells Fargo's interpretation that Plaintiff did, indeed, mean to refer to communications in 2012 as the basis for

this claim. Such communications fall outside the statute of limitations and the scope of the SAC. As such, Wells Fargo demonstrated that Plaintiff lacked the evidence to support this claim.

Plaintiff responds by attempting to alter his claim from involving "several letters" to the March 11, 2014 telephone conference he had before he attended the Workshop. He claims Ms. Nuncio misinformed him that he sale date *might* before postponed if a work-out is found. (Oppn. at 19:22-25). And, that she inaccurately informed him that he should find out at the time Workshop if his application would be accepted.[6] (Opnn. at 20:3-7). This effort fails for a variety of reasons.

First, the SAC makes no reference to the March 11, 2014 telephone call and references only the communications taking place during and after the Workshop. (SAC ¶¶30-33). Second, to the extent he is attempting to transform the statements before the Workshop into some type of negligent misrepresentation claim, that effort must fail because: 1) negligent misrepresentation is not pled at all, let along pled with the particularity required by Rule 9; and 2) the statements made on March 11, 2014 were predictions about what would happened the next day at the Workshop and California law does not recognize the tort of a negligent false promise or prediction regarding future events. *Tarmann v. State Farm Mutual Auto Review Ins. Co.*, 2 Cal.App.4th 153, 159 (1991).

Third, , there was nothing inaccurate in the statements by Wells Fargo's representative. She said that ***if*** he brought all the documents she listed, the bank should be able to reach a decision at the Workshop. (Bailey Decl., Ex. 15 a p.126 (Call. Tr. 47:10-12)). Because Plaintiff did not bring a Profit & Loss covering 90-days, Ms. Stepanski's tax returns, or proof of her occupancy, Wells Fargo could not reach a determination at the Workshop, just as the representative predicted. The representative also said the bank *might* be able to postpone the sale

---

[6] He also mentions a September 21, 2012 posting of a sale date. (Oppn. at 20:8-9). That posting has no apparent connection to any issue in the case and Plaintiff does not articulate anyway that it harmed him – nor could he given that the sale apparently never happened. Plaintiff also cites what he believes to be inaccurate information in Wells Fargo's internal notes logs. (Oppn. at 20:10-18). But such information (which is not inaccurate) cannot support his claim because he admits "Defendant did not communicate the information in the Notes Logs . . . to Plaintiff." (Oppn. at 20:18-19).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

if a workout could be reached. Plaintiff claims there was no sale to postpone, but cannot dispute the fact that the was told of the April 2, 2014 sale date reflected on the Notice of Sale which is dated March 11, 2014.

Notably, Plaintiff does not argue, as he had previously claimed, that any information given to him about the process at the March 12, 2014 Workshop itself was inaccurate. (See Oppn. at 19-20). Rather, he now references only the call before the Workshop and Wells Fargo internal communications. (*Id.*). He has apparently abandoned his claim that Wells Fargo gave him inaccurate information at the Workshop.

Because Plaintiff cannot present evidence of any inaccurate information conveyed to him regarding the modification process, it is hardly surprising that he also cannot point to any evidence of harm proximately caused by his receipt of such inaccurate information. There is no allegation, let alone evidence. of anything he did in reliance on any inaccurate information.

**C. <u>Plaintiff's Final Claim of Negligence Has Become Indistinguishable from His First</u>**

The Opposition concedes that his third alleged act of negligent "filing a notice of sale while his application was pending" is completely subsumed by and redundant with his first "failing to exercise ordinary care and due diligence in negligently processing his complete application." (See SAC ¶55, Oppn. at 21:1-6). As a result, this portion of the claim fails for the same reasons discussed above: there was no completed loan application pending; the recording of the Notice of Sale on March 13, 2014 was entirely proper; and Plaintiff has no evidence of damages proximately caused by that recording.

**D. <u>Plaintiff's Duty of Care Analysis is Flawed</u>**

Even if the foregoing was not sufficient to warrant judgment in Wells Fargo's favor, the Court would still have to award summary judgment as to the negligence claim because Plaintiff has failed to present evidence to justify the imposition of a tort duty of care. As a threshold matter, Plaintiff fails to address Wells Fargo's analysis regarding the impact of privity on the application of the *Biakanja* factors within the holding of *Nymark v. Heart Fed. Sav. & Loan Assn.,* 23 Cal.App.3d 1089 (1991). As such, he fails to refute that the privity between him and Wells Fargo means that the *Biakanja* factors do not apply.

Moreover, even a cursory review of some of the *Biakanja* factors confirms that Plaintiff cannot show their applicability here. For example, Plaintiff argues that harm was foreseeable because a loan modification was necessary to reduce his principal. (Oppn. at 12). This harm is not only not foreseeable, it is not existent. The Note provides that the principal cannot be more than 125% of the original principal. (Gilmore Decl., Ex. D). If it were ever to get that high (and Plaintiff presents no evidence it will), the payments will recast to prevent the accumulation of deferred interest. Thus, this harm is beyond speculative to the point of being nonexistent.

Next, Plaintiff argues that he has established a degree of certainty that he suffered harm. (Oppn. at 13-14). Here he references the inapplicable standards under the Unfair Competition Law ("UCL") in California Business & Professions Code §17200 and 17204. What that has to do with the certainty of harm on his negligence claim is far from clear. The only harm he references relates to the accounting of this bond payments and associated credit reporting. (Oppn. at 13). As previously noted, all such activity is outside the complaint and the claim of negligence stemming from the modification application processing. Which, of course, also undermines any claim of a closeness in the connection between Wells Fargo's alleged negligent conduct and the injury suffered.

In sum, Plaintiff cannot establish *any* of the elements of a breach of contract: duty, breach, damages or causation.

## 6. CONCLUSION

Plaintiff has failed to carry his burden as to either of his causes of action and summary judgment should be awarded to Wells Fargo.

Dated: June 30, 2015

ANGLIN FLEWELLING RASMUSSEN
CAMPBELL & TRYTTEN LLP

By: */s/ Robert A. Bailey*
Robert A. Bailey
Attorneys for Defendant,
WELLS FARGO BANK, NA

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin Flewelling Rasmussen Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

on the interested parties in said case as follows:

**Served By Means Other than Electronically Via the Court's CM/ECF System:**

***Plaintiff, Pro Se***

Kevin Gilmore
955 Virginia Street
Berkley, CA 94710

☒ **BY OVERNIGHT MAIL SERVICE:** I am readily familiar with the firm's practice of collection and processing of correspondence by GSO Delivery Services. Under that same practice it would be deposited on that same day in an GSO Delivery Services collection receptacle at Pasadena, California, with instructions to bill sender on the label.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on June 30, 2015.

| Marianne Mantoen | */s/ Marianne Mantoen* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |